UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| FRANK J. MEROLA, in his official capacity as Clerk of the County of Rensselaer, New York, and | Civil Action No.   1:19-cv-00899 (GLS/TWD) |
| Plaintiff, | **COMPLAINT** |
| -against- | |
| ANDREW M. CUOMO, in his official capacity as Governor of the State of New York, LETITIA A. JAMES, in her official capacity as Attorney General of the State of New York, and MARK J.F. SCHROEDER, in his official capacity as Commissioner of the New York State Department of Motor Vehicles, | |
| Defendants. | |

_____

Plaintiff Frank J. Merola, as Clerk of the County of Rensselaer, New York, by and through his attorneys, Harris Beach PLLC, as and for his Complaint, sets forth as follows:

### Preliminary Statement

1.    In the aftermath of the terrorist attacks of September 11, 2001, critical safeguards were put in place to ensure that New York state identification was only given to eligible recipients and that the New York Department of Motor Vehicles could "more accurately exchange driver's license data with police agencies, other states and the Federal government."[1]

2.    The prudence of this policy was validated when the 9/11 Commission issued its comprehensive report, which not only found that inadequacies in state licensure laws allowed all but one of the hijackers to obtain identification documents, but further recommended enhancement

_____

[1] *See*, 15 NYCRR § 3.9.

of the state procedures and encouraged the federal and state and local governments to work closely together on national security issues, like immigration.

3.      On June 17, 2019, Governor Andrew M. Cuomo signed into law the Driver's License Access and Privacy Act, which reversed the sound policy of post-9/11 era and allows the issuance of driver's licenses to undocumented immigrants.

4.      The so-called "Green Light Law" goes further than just changing the acceptable proof of identity documentation for a driver's license applicant — contrary to the 9/11 Commission's sound recommendations, the law also requires the Commissioner of the New York Department of Motor Vehicles, and his agents, to shield from federal immigration agencies all information related to applicants for the class of license now available to undocumented immigrants.

5.      Under New York law, county clerks from 51 counties serve as agents of the Commissioner of the New York Department of Motor Vehicles and, therefore, are required to issue licenses and otherwise abide by the terms of the Green Light Law.[2]  This includes Plaintiff Frank J. Merola, the Clerk of the County of Rensselaer.

6.      Although the Green Light Law is bad policy and makes New Yorkers significantly less safe, the law also conflicts with multiple federal immigration laws and requires Mr. Merola to decide whether to comply with New York law or federal law and face jeopardy in either circumstance.

7.      The Supremacy Clause of the United States Constitution provides a critical safeguard against state laws that, like the Green Light Law, conflict with federal law and/or impose

---

[2] *See,* N.Y. Vehicle & Traffic Law § 205(1).

conflicting duties upon state and local officials.  Under constitutional principles, state laws that conflict with federal laws are unconstitutional and void.

8.      In this action, Mr. Merola seeks a judicial declaration that the Green Light Law is unconstitutional and a preliminary and permanent injunction enjoining Defendants Andrew M. Cuomo, Letitia A. James, and Mark J.F. Schroeder, and their officers, agents, and employees, from administering and/or enforcing the law.

## Parties

9.      Plaintiff Frank J. Merola is the Clerk of the County of Rensselaer, New York and maintains his principal place of business in the County of Rensselaer, New York.

10.     Defendant Andrew M. Cuomo is the Governor of the State of New York and maintains his principal place of business in the County of Albany, New York.

11.     Defendant Letitia A. James is the Attorney General of the State of New York and maintains her principal place of business in the County of Albany, New York.

12.     Defendant Mark J.F. Schroeder is the Commissioner of the New York Department of Motor Vehicles and maintains his principal place of business in the County of Albany, New York.

13.     All Defendants are being sued solely in their official capacity.

## Jurisdiction and Venue

14.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331.  Plaintiff asserts causes of action under the United States Constitution, including that the Green Light Law is preempted by certain federal laws.

15.     This action seeks relief pursuant to 28 U.S.C. §§ 2201 and 2202.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

17.     Service of this Complaint upon Defendant Attorney General Letitia James satisfies the notice requirement to the New York State Attorney General under N.Y. Executive Law § 71(1).

### Enactment of the Green Light Law

18.     On June 17, 2019, New York Governor Andrew Cuomo signed into law the Driver's License Access and Privacy Act, which is also known as the "Green Light Law".  The Green Light Law substantially amends sections 201, 502, and 508 of the New York Vehicle and Traffic Law, and fundamentally changes both (i) the documentation that may be accepted for an applicant to obtain a non-commercial driver's license in New York and (ii) the record-keeping and information-sharing duties of the Commissioner of the Department of Motor Vehicles and his agents, including county clerks like Mr. Merola.  A copy of the Green Light Law is attached as **Exhibit "A"** to the Complaint.

19.     According to the law's sponsors, the purported justification for the Green Light Law was "[t]he need to secure driving privileges for all residents of New York, including undocumented immigrants, has been a long term effort that has reached the pinnacle of urgency."[3] Further, the bill's proponents stated that "[t]his legislation addresses the long-held need by undocumented immigrants and workers to secure driving privileges . . . ."[4]

20.     Just after signing the bill into law, Governor Cuomo publicly expressed significant concerns about the legality of the Green Light Law and stated that he expected to face legal

---

[3] New York State Assembly Memorandum in Support of Legislation, Bill No. A3675B, at 2.
[4] *Id.*

challenges concerning the law's constitutionality, acknowledging that the law presented a "difficult legal question".[5]

21.     The day of the law's enactment, Counsel to Governor Cuomo, Alphonso David, issued a statement:

> The Solicitor General was asked to review bill number A3675-B/S1747-B to ensure that undocumented individuals who apply for driver's licenses or identification cards would not be unintentionally exposed to a Federal government seeking to use their information for deportation.  In response, the Attorney General stated that she believes there are "safeguards" in the bill, and it can be defended; in other words, it cannot be weaponized to be used against undocumented individuals. The Solicitor General, a former federal prosecutor and former Acting U.S. Solicitor General, who presumably knows whether or not the relevant information can be safeguarded, has remained unresponsive on this critical issue. With that said, based on the Attorney General's representation, the Governor will sign the bill.[6]

22.     Prior to the enactment of the Green Light Law, an applicant for a non-commercial driver's license was required to provide his or her social security number or proof that he/she was not eligible to obtain one.  This important requirement was the result of a 2002 regulation promulgated under then-Governor George Pataki to provide additional security to New York residents in the wake of the terrorist attacks of September 11, 2001.[7]

23.     The Green Light Law amends that provision and allows an applicant for a non-commercial driver's license or learner's permit to provide "an affidavit signed by such applicant that they have not been issued a social security number" in lieu of providing his/her social security number or other adequate documentation from the Social Security Administration.[8]

---

[5] *See, Cuomo Won't Say If He'd Remove Clerks Who Refuse To Issue Licenses*, STATE OF POLITICS, SPECTRUM NEWS (June 21, 2019), at https://www.nystateofpolitics.com/2019/06/cuomo-wont-say-if-hed-remove-clerks-who-refuse-to-issue-licenses/

[6] New York State Governor's Website, at https://www.governor.ny.gov/news/statement-counsel-governor-alphonso-david-6 (last visited on July 23, 2019).

[7] *See,* 15 NYCRR § 3.9(a).

[8] N.Y. Vehicle & Traffic Law § 502(1) [as amended].

24.     The Green Light Law also fundamentally changes the record-keeping and information-sharing responsibilities of the Commissioner of the New York Department of Motor Vehicles and his agents, including Mr. Merola as the Rensselaer County Clerk, and expressly prohibits cooperation with requests for applicant information from federal immigration authorities.

25.     With respect to non-commercial driver's licenses or learner's permits that do not meet federal standards of identification pursuant to the federal REAL-ID Act, the Green Light Law requires the Commissioner of the New York Department of Motor Vehicles and his agents, including Mr. Merola as the Rensselaer County Clerk, to

> not disclose or make accessible in any manner records or information that he or she maintains, to any agency that primarily enforces immigration law . . . unless . . . presented with a lawful court order or judicial warrant signed by a judge appointed pursuant to article III of the United States constitution.[9]

26.     The Green Light Law specifically prohibits the provision of such records or information to United States Immigration and Customs Enforcement and United States Customs and Border Protection.[10]

27.     Upon receiving a request from United States Immigration and Customs Enforcement or United States Customs and Border Protection for such information, within three days, the Commissioner of the New York Department of Motor Vehicles and his agents, including Mr. Merola as the Rensselaer County Clerk, must notify the individual whose records were sought and inform him/her of the specific information requested and the identity of the requesting agency.[11]

---

[9] N.Y. Vehicle & Traffic Law § 201(12)(a) [as amended].
[10] *See, id.* § 201(12)(c) [as amended].
[11] *See, id.* § 201(12)(a) [as amended].

28.     The Green Light Law also requires any other person who has access to records or information related to non-commercial driver's licenses or learner's permits that do not meet federal standards of identification to certify

> that such person or entity shall not (i) use such records or information for civil immigration purposes or (ii) disclose such records or information to any agency that primarily enforces immigration law or to any employee or agent of any such agency unless such disclosure is pursuant to a cooperative arrangement between city, state and federal agencies which arrangement does not enforce immigration law and which disclosure is limited to the specific records or information being sought pursuant to such arrangement.[12]

29.     Further, the Commissioner of the New York Department of Motor Vehicles and his agents, including Mr. Merola as the Rensselaer County Clerk, is prohibited under the Green Light Law from disclosing (i) documents submitted in support of or otherwise related to a non-commercial license application or (ii) the type of non-commercial driver's license or learner's permit held by any person.[13]

30.     In sum, the Green Light Law not only authorizes and facilitates the issuance of non-commercial driver's licenses to undocumented immigrants, but also requires the Commissioner of the New York Department of Motor Vehicles and his agents, including Mr. Merola as the Rensselaer County Clerk, to shield any records submitted by undocumented immigrants from federal immigration agencies.

### The Impact of the Green Light Law on Mr. Merola

31.     In his capacity as the Rensselaer County Clerk, Mr. Merola and his staff are responsible for the recording of real property records, the filing and maintenance of court documents, collecting certain fees on behalf of Rensselaer County, issuing permits, as well as numerous other services for residents of Rensselaer County.

---

[12] *Id.* § 201(12)(b) [as amended].
[13] *Id.* §§ 201(8)-(10) [as amended].

32.     In addition to those tasks, pursuant to New York Vehicle and Traffic Law § 205(1), Mr. Merola serves as the agent of the Commissioner of the Department of Motor Vehicles in connection with, among other things, issuing driver's licenses in Rensselaer County.  Under this statute, with respect to issuing driver's licenses, Mr. Merola serves at the unfettered discretion of the Commissioner "unless and until the commissioner shall otherwise direct."[14]

33.     As an agent of the Commissioner of the Department of Motor Vehicles, Mr. Merola is required to administer all tasks assigned to the Commissioner by statute related to the issuance of driver's licenses within the statutory delegation of authority.  Once the Green Light Law goes into effect, Mr. Merola will be required under the terms of the law to issue non-commercial driver's licenses to undocumented immigrants, and will be subject to the record-keeping and information-sharing restrictions thereunder.

34.     If a county clerk refuses to administer New York laws within his purview, the Governor is authorized to remove him or her from office.  Article 13, Section 13 of the New York State Constitution provides, in pertinent part, that:

> The governor may remove any elective sheriff, county clerk, district attorney or register within the term for which he or she shall have been elected; but before so doing the governor shall give to such officer a copy of the charges against him or her and an opportunity of being heard in his or her defense.

35.     The prosecution of such actions is delegated to the New York Attorney General.[15]

36.     This threat of removal from office is not hypothetical.  Defendant Letitia James has pledged to "vigorously defend" the law,[16] and Defendant Mark Schroeder indicated that he will "fully implement" the law despite the concerns expressed by numerous county clerks (his agents),

---

[14] N.Y. Vehicle & Traffic Law § 205(1).
[15] *See,* N.Y. Executive Law § 63(1).
[16] *See, Undocumented immigrants will receive NY driver's licenses,* TIMES UNION (June 18, 2019), available at https://www.timesunion.com/news/article/Undocumented-immigrants-may-soon-be-allowed-to-14006198.php

including Mr. Merola.[17]  Governor Andrew Cuomo, for his part, "is non-committal when it comes to removing county clerks from office if they refuse to enforce the newly-passed Green Light Law."[18]

37.     There is also a significant possibility that the Trump Administration will seek to criminally prosecute state officials who refuse to provide information to federal immigration agencies as is required by the Green Light Law.  In fact, the then-acting Director of Immigration and Customs Enforcement, Thomas Homan, threatened criminal prosecution of elected officials who refused to cooperate with — and in some instances opposed — federal immigration enforcement efforts.  He stated: "We gotta take [sanctuary cities] to court, and we gotta start charging some of these politicians with crimes."[19]  President Trump also threatened a federal obstruction investigation against Oakland Mayor Libby Schaaf for warning residents of an impending Immigration and Customs Enforcement raid.[20]

### Conflict with Federal Law

38.     State laws that infringe upon issues within the exclusive authority of the federal government or which conflict with federal laws are preempted under the United States Constitution.   Article VI, Section 2 of the United States Constitution provides that: "This

---

[17] *See, Cuomo's DMV Nominee Says He Backs Driver's Licenses For Undocumented Immigrants,* STATE OF POLITICS, SPECTRUM NEWS, at https://www.nystateofpolitics.com/2019/01/cuomos-dmv-nominee-says-he-backs-drivers-licenses-for-undocumented-immigrants/ (last visited July 23, 2019).

[18] *Governor Cuomo talks post-legislative session*, WBFO, June 25, 2019, at https://news.wbfo.org/post/governor-cuomo-talks-post-legislative-session (last visited July 23, 2019).

[19] *See, Trump Administration Wants To Arrest Mayors of 'Sanctuary Cities'*, NEWSWEEK (January 16, 2018), available at https://www.newsweek.com/trump-administration-wants-arrest-mayors-sanctuary-cities-783010

[20] *See, Trump asks Sessions to consider prosecuting Oakland mayor over ICE raid*, POLITICO (May 16, 2018), available at https://www.politico.com/story/2018/05/16/trump-sessions-oakland-mayor-prosecution-sanctuary-cities-594470.

Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land."

39.     The federal government's authority to regulate immigration is substantial and exclusive.  This authority is principally derived from Article 1, Section 8 of the U.S. Constitution, which grants Congress the power to "[t]o regulate Commerce with foreign Nations, and among the several States" and "[t]o establish a uniform Rule of Naturalization".[21]

40.     State laws that conflict with or frustrate the purpose of a federal law are preempted and unconstitutional.  The Green Light Law is such a law.

### A.  8 U.S.C. § 1324

41.     Under 8 U.S.C. § 1324, it is a federal crime to knowingly or recklessly "conceal, harbor, or shield from detection" an undocumented immigrant and to "attempt" or "aid and abet" the commission of such offenses.[22]

42.     The conduct covered by 8 U.S.C. § 1324(a)(1)(A)(iii) has been broadly interpreted to include conduct intended "(1) substantially to facilitate an illegal alien's remaining in the United States, and (2) to prevent the alien's detection by immigration authorities".[23]  Further, the "shield from protection" language in the statute covers "the use of any means to prevent the detection of illegal aliens in the United States by the Government".[24]

43.     A violation of 8 U.S.C. § 1324(a)(1)(A)(iii) is punishable by fine or up to five years in prison.[25]

---

[21] U.S. CONST., ART. I, § 8, cl. 3 & 4.
[22] 8 U.S.C. §§ 1324(a)(1)(A)(iii); (v)(2).
[23] *See, United States v. George*, 779 F.3d 113, 118 (2d Cir. 2015).
[24] *See, United States v. Ye*, 588 F.3d 411, 415 (7th Cir. 2009).
[25] *Id.* § (a)(1)(B)(ii).

**B. 8 U.S.C. § 1644 & 8 U.S.C. § 1373(a)**

44.     The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 specifically provides that:

> Notwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from the Immigration and Naturalization Service information regarding the immigration status, lawful or unlawful, of an alien in the United States.[26]

45.     Similarly, 8 U.S.C. § 1373(a) provides:

> Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

46.     The information-sharing prohibitions in the Green Light Law are directly at odds with those federal statutes, which expressly invalidate any state law that restricts state and local governments from sharing information related to a person's immigration status in their possession and/or custody with federal immigration agencies.

**C. 8 U.S.C. § 1324a**

47.     The Immigration and Reform Control Act of 1986 made it a federal crime to "hire, or to recruit or refer for a fee, for employment in the United States an alien knowing the alien is an unauthorized alien"[27] and "after hiring an alien for employment in accordance with paragraph (1), to continue to employ the alien in the United States knowing the alien is (or has become) an unauthorized alien with respect to such employment."[28]

---

[26] 8 U.S.C. § 1644.
[27] 8 U.S.C. § 1324a(a)(1)(A).
[28] *Id.* § 1324a(a)(2).

48.     By enacting this law, Congress established a "comprehensive framework for combating the employment of illegal aliens."[29]

49.     The Green Light Law expressly frustrates the enforcement of this federal law.  The express purpose of the Green Light Law — "to secure driving privileges [for undocumented immigrants] . . . to get back and forth to work" and to supplement New York's "tight labor market"[30] — is designed to promote a result (increased employment by undocumented immigrants) that federal law prohibits.

50.     The Green Light Law requires county clerks, like Mr. Merola, to violate these federal statutes by prohibiting the disclosure of information in their possession related to the immigration status of driver's license applicants/holders to federal immigration officials in response to a lawful request.

51.     Further, the Green Light Law requires county clerks, like Mr. Merola, to issue driver's licenses to undocumented immigrants for the express purpose of making it easier for those undocumented immigrants to violate federal employment laws.

52.     Pursuant to Article XIII, Section I of the New York State Constitution and state statute,[31] local officials, including county clerks, are required to make the following oath:

> I do solemnly swear  (or affirm) that I will support the constitution of the United States, and the constitution of the State of New York, and that I will faithfully discharge the duties of the office of ......, according to the best of  my ability.

53.     The Green Light Law makes it impossible for local officials to abide by their oath of office and, instead, forces local officials, like Mr. Merola, to choose whether to comply with State law or federal law.

---

[29] *Arizona v. United States*, 567 U.S. 387, 404 (2012) (internal quotations omitted).
[30] *See*, New York State Assembly Memorandum in Support of Legislation, Bill No. A3675B, at 2.
[31] *See*, N.Y. Public Officers Law § 10.

54.     Under the Supremacy Clause of the United States Constitution, where, as here, there is a direct conflict between a state law and federal law, the state law is unconstitutional and must be struck down.

**The Green Light Law Signals a Dangerous Reversion to the Pre-9/11 Era**

55.     Not only does the Green Light Law put local officials in the impossible position of having to decide whether to comply with New York State law or federal law, it also frustrates the ability of Rensselaer County officials to fulfill their legal obligations by cooperating and sharing information with federal immigration officials, including United States Immigration and Customs Enforcement and United States Customs and Border Protection.

56.     Information sharing between local officials and the federal government is critical to effective law enforcement and ensuring the security of Americans, including New York residents.

57.     Foreshadowing the national security risks that are introduced when local officials are instructed to disregard federal government prerogatives related to immigration, the 9/11 Commission, highlighting the inadequacies of the national security infrastructure at the time, stated:

> In 1996, a new law enabled the INS to enter into agreements with state and local law enforcement agencies through which the INS provided training and the local agencies exercised immigration enforcement authority.  Terrorist watchlists were not available to them.  Mayors in cities with large immigrant populations sometimes imposed limits on city employee cooperation with federal immigration agents.  A large population lives outside the legal framework.  Fraudulent documents could be easily obtained.[32]

58.     In light of the lack of adequate coordination among law enforcement agencies, the 9/11 Commission recommended closer coordination between federal authorities and state and local

---

[32]  9/11 Commission Report, at 81, available at https://www.9-11commission.gov/report/911Report.pdf.

law enforcement agencies, and indicated that the lax requirements for obtaining identification documents likely contributed to the attacks:

> There is a growing role for state and local law enforcement agencies.  They need more training and work with federal authorities so that they can cooperate more effectively with those federal authorities in identifying terrorist suspects.
>
> All but one of the 9/11 hijackers acquired some form of U.S. identification document, some by fraud.  Acquisition of these forms of identification would have assisted them in boarding commercial flights, renting cars, and other necessary activities.[33]

59.     In response to these concerns, by a regulation promulgated in 2002, the New York Department of Motor Vehicles required driver's license applicants to either "submit his or her social security number or provide proof that he/she is not eligible for a social security number."[34] The express purpose of the regulation was to "permit the department to more accurately exchange driver's license data with police agencies, other states and the Federal government."[35]

60.     In the nearly 20 years since the terrorist attacks on September 11, 2001, many state and municipal government officials, including the current New York State Legislature and the executive branch Defendants, appear to have forgotten these lessons learned from the tragedies of 9/11 and are intent on reverting to laws that the 9/11 Commission, after years of careful analysis, concluded were unsafe.

61.     In particular, states and municipalities across the U.S. and New York have adopted policies pursuant to which they are refusing to enforce federal immigration laws and/or cooperate with federal immigration officials.[36]

---

[33] *Id.* at 390.
[34] 15 NYCRR § 3.9(a).
[35] 15 NYCRR § 3.9(c).
[36] *See, e.g.*, *Maps: Sanctuary Cities, Counties, and States*, CENTER FOR IMMIGRATION STUDIES, at https://cis.org/Map-Sanctuary-Cities-Counties-and-States (last visited July 23, 2019); *see also*, San Francisco Mayor's Website, at https://sfmayor.org/sanctuary-city; *Troy City Council votes 4-3 to*

62.     Perhaps more dangerous still, laws like the Green Light Law provide undocumented immigrants with access to state identification documentation that enhances the ability of such persons to access state and federal office buildings, commercial airline flights, rental cars, and employment in regulated and secure industries.  This list is far from exclusive.

63.     Although the Green Light Law purports to authorize the issuance of non-commercial driver's licenses and learner's permits to undocumented immigrants that "d[o] not meet federal standards for identification,"[37] and, thus cannot be used for the purposes set forth in the federal REAL-ID law, at a minimum, the Green Light Law increases the risk that undocumented immigrants will be able to access the sensitive national security infrastructure.

64.     In fact, the differences between the federally-compliant and non-federal compliant identification authorized by the New York Department of Vehicles can only be determined by a miniscule designation in the upper right hand corner of such licenses.  A simple comparison of the REAL-ID and "standard" non-REAL-ID compliant driver's licenses illustrates how easily the distinguishing feature could be overlooked:[38]



_____

*OK   sanctuary   city   status*, TIMES   UNION   (July   11,   2019),   available   at https://www.timesunion.com/news/article/Troy-City-Council-Democrats-support-sanctuary-14089418.php.
[37] *See,* N.Y. Vehicle & Traffic Law § 502(1) [as amended].
[38]  New  York  State  Department  of  Motor  Vehicles  Website,  at  https://dmv.ny.gov/driver-license/federal-real-id (last visited July 23, 2019).

65.    The insignia on the different New York State licenses will be easily overlooked by officials of other states and federal officials charged with knowing the particular characteristics of identification issued by each of the 50 states, and undocumented immigrants will undoubtedly obtain access to facilities and privileges that they are not entitled to.

66.    The Green Light Law also increases the risk that undocumented immigrants will be incorrectly added to the voting rolls and permitted to vote since voter registration for a majority of New York residents is completed through the Department of Motor Vehicles registration.  There is a significant risk that, since undocumented immigrants are not required to provide proof of citizenship to obtain a non-commercial driver's license or learner's permit, they will be fraudulently registered to vote as well.[39]  This likely damage to the New York electorate will be nearly impossible to reverse.

67.    In sum, the Green Light Law creates real national security and other problems, and constitutes a return to policies that were deemed inadequate by the 9/11 Commission and which are contrary to their well-reasoned recommendations.

---

[39] This was an issue of significant debate in the New York State Assembly.  Assemblyman Doug Smith noted: "I actually have a number of examples from the Suffolk County Board of Elections of cases where individuals with DMV numbers that are not citizens have actually registered to vote with that number, checked the box that that they were a citizen or the box was checked on the application that they signed and they actually did vote."  NYS Assembly Transcript, at 89-90.

## FIRST CAUSE OF ACTION

### (Declaratory Judgment)

68.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 67 as if fully set forth herein.

69.     The Supremacy Clause of the United States Constitution provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land."[40]

70.     Pursuant to the Supremacy Clause, any state law that conflicts with a federal law is preempted and unconstitutional.

71.     Conflict preemption jurisprudence dictates that an unconstitutional conflict exists where it is impossible to simultaneously comply with both state and federal law.

72.     A state statute is also preempted if it infringes upon a category of federal legislation where Congress has demonstrated an intention to occupy the field without supplementation by state law.

73.     Congress has exclusive authority to regulate immigration.

74.     The recently-enacted Green Light Law conflicts with multiple federal immigration laws, including 8 U.S.C. § 1324, 8 U.S.C. § 1644, 8 U.S.C. § 1373(a), and 8 U.S.C. § 1324a.

75.     The Green Light Law also stands as an obstacle to the enforcement of federal immigration laws since it provides identification to undocumented immigrants that such persons cannot obtain from the federal government and prohibits federal immigration agencies, charged with the enforcement of federal immigration laws, from accessing any documentation related to or received from undocumented immigrants.

---

[40] U.S. CONST., Art. 6, § 2.

76.     As Clerk of the Rensselaer County, and an agent of the Commissioner of the New York Department of Motor Vehicles, Mr. Merola is required to administer and comply with the Green Light Law.

77.     If Mr. Merola refuses to administer and comply with the Green Light Law, Mr. Merola would potentially face significant consequences including, but not limited to, removal from office by Governor Andrew Cuomo and Attorney General Letitia James.  On the other hand, if Mr. Merola complies with the requirements of the Green Light Law, he would likely be in violation of federal immigration laws and would face a substantial risk of criminal prosecution by federal authorities.

78.     Mr. Merola is entitled to a judgment pursuant to 28 U.S.C. §§ 2201 and 2202, declaring that:

   a.  The Green Light Law is preempted in its entirety since it stands as an obstacle to the administration of federal immigration laws and/or seeks to regulate a field of exclusive federal authority and is therefore unconstitutional.

   b.  The licensure provisions contained in New York Vehicle & Traffic Law § 502 (as amended) that remove the requirement that a driver's license applicant provide his or her Social Security number or proof of ineligibility from the Social Security Administration conflicts with federal immigration law and are therefore preempted and unconstitutional.

   c.  The information-sharing provisions contained in New York Vehicle & Traffic Law § 201 (as amended) that (i) prohibit the disclosure of any documentation related to or received from undocumented immigrants, including specifically to federal immigration agencies, including the type of driver's license or learner's permit

issued, (ii) require all persons with access to such records to certify that they will not disclose such records to federal immigration authorities, and (iii) require the notification of any individual whose records are requested by federal immigration agencies, conflict with federal immigration law and are therefore preempted and unconstitutional.

## SECOND CAUSE OF ACTION

### (Preliminary and Permanent Injunction)

79.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 78 as if fully set forth herein.

80.     Plaintiff seeks an injunction prohibiting Defendants Governor Andrew Cuomo, Attorney General Letitia James, and Commissioner of the Department of Motor Vehicles Mark Schroeder, and their officers, agents, and employees from (i) the implementation of the Green Light Law and (ii) taking any punitive action against Mr. Merola or any similarly-situated county clerk based upon their refusal to comply with the Green Light Law or any provision thereof.

81.     Absent judicial intervention, the Green Light Law will go into effect on December 14, 2019, 180 days after it was signed into law by Governor Andrew Cuomo.

82.     For the reasons set forth above, Mr. Merola is likely to succeed in obtaining a judgment declaring the Green Light Law preempted and unconstitutional, in whole or part.

83.     Mr. Merola's allegations also raise substantially serious questions about the constitutionality of the Green Light Law that warrants judicial review of the law before it goes into effect.

84.     If the Green Light Law goes into effect, Mr. Merola will suffer irreparable harm as he will be forced to choose between violating the Green Light Law or federal immigration law.  As

set forth herein, either option carries with it substantial risk of significant adverse consequences to Mr. Merola.

85.     Mr. Merola has no adequate remedy at law.

86.     The equities tip decidedly in favor of Mr. Merola.  Unless an injunction is issued, Mr. Merola, as well as other county clerks and their employees across the State, will be required to comply with the Green Light Law or face significant consequences from state authorities, including the Defendants, if they elect not to do so.  If Mr. Merola or those similarly situated carry out the law, they face the risk of criminal prosecution for violating federal immigration law.

87.     Public policy also favors granting an injunction in favor of Mr. Merola and enjoining the implementation of the Green Light Law.  For the reasons set forth herein, the Green Light Law endangers New Yorkers including, but not limited to, by returning to pre-9/11 policies that made the State of New York less secure and restricts the federal government's ability to enforce immigration laws within and without the State of New York.

88.     At a minimum, the implementation of the Green Light Law should be enjoined until a judicial determination concerning the law's constitutionality can be made.

*Remainder of page intentionally left blank*

**WHEREFORE,** Plaintiff Frank J. Merola respectfully requests that the Court:

A.    Enter a declaratory judgment that the provisions of the New York Vehicle and Traffic Law specified herein are preempted by federal immigration laws and, therefore, unconstitutional;

B.    Issue preliminary and permanent injunctions enjoining Defendants Andrew M. Cuomo, Letitia A. James, and Mark J.F. Schroeder, and their officers, agents, and employees, from administering and/or enforcing the provisions of the New York Vehicle and Traffic Law alleged herein to violate the United States Constitution; and

C.    Grant such other and further relief for Plaintiff Frank J. Merola as may be just and proper.

Dated:  July 24, 2019
        Albany, New York

HARRIS BEACH PLLC


By: _____
    Karl J. Sleight, Esq. (Bar Roll No. 601976)
    Elliot A. Hallak, Esq. (Bar Roll No. 520048)
    677 Broadway, Suite 1101
    Albany, New York 12207
    Tel: (518) 427-9700
    Fax:  (518) 427-0235
    E-mail: ksleight@harrisbeach.com
    E-mail: ehallak@harrisbeach.com

    *Attorneys for Plaintiff*