UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

FRANK J. MEROLA, in his official capacity as
Clerk of the County of Rensselaer, New York,

<em>Plaintiff</em>,

-against-

ANDREW M. CUOMO, in his official capacity as
Governor of the State of New York,
LETITIA A. JAMES, in her official capacity as
Attorney General of the State of New York, and
MARK J.F. SCHROEDER, in his official capacity as
Commissioner of the New York State Department of
Motor Vehicles,

<em>Defendants</em>.

1:19-CV-0899

(GLS/TWD)

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE

LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendants
The Capitol
Albany, New York  12224-0341

KEITH J. STARLIN
Assistant Attorney General, of Counsel
Telephone:  (518) 776-2622
Fax: (518) 915-7738 (Not for service of papers)

Dated: Albany, New York
      August 15, 2019

**Table of Contents**

PRELIMINARY STATEMENT……………………………………………………..……..……..1

BACKGROUND………...……………………………………………………………………..1

POINT I

      THIS ACTION SHOULD BE TRANSFERRED TO
      THE WESTERN DISTRICT OF NEW YORK………………..…………...……….7


CONCLUSION ……………………………………………………………………………21

## PRELIMINARY STATEMENT

Defendants Andrew M. Cuomo, Governor of the State of New York ("Governor Cuomo"), Letitia James, Attorney General of the State of New York ("Attorney General James") and Mark J. F. Schroeder, Commissioner of the New York State Department of Motor Vehicles ("DMV Commissioner Schroeder") submit this Memorandum of Law in support of their motion to transfer venue of this action to the Western District of New York pursuant to 28 U.S.C. § 1404(a).   As is described below, prior to plaintiff's filing of the present action, a mirror-image action had already been previously filed in the Western District of New York.   That other, previously filed action was brought by a plaintiff with the same status as the plaintiff in the present matter, against the same defendants, concerning the same issues and requests virtually the same relief.   It is anticipated that if the present motion to transfer is granted, defendants will then request that this action be consolidated with the aforementioned mirror-image action in the Western District of New York.   As is discussed herein, the present lawsuit could have been properly brought in the Western District of New York, the mirror-image action in said district was filed first and thus has primacy, and an examination of the factors relevant in a 28 U.S.C. § 1404(a) analysis favors transferring this matter to the Western District of New York, and thus it should be so transferred.

## BACKGROUND

On July 24, 2019, plaintiff Frank Merola, "in his official capacity as Clerk of the County of Rensselaer, New York" filed this action in the Northern District of New York ("N.D.N.Y.") naming Governor Cuomo, Attorney General James and DMV Commissioner Schroeder as the defendants.  In his Complaint (the "Merola Complaint"), plaintiff Merola challenges the New

York State Driver's License Access and Privacy Act, claiming that it conflicts with federal law and requires plaintiff, as a County Clerk, "to decide whether to comply with New York law or federal law and face jeopardy in either circumstance". (Dkt 1, ¶ 6). The Merola Complaint notes that as County Clerk, plaintiff Merola is an agent of the DMV Commissioner in connection with issuing driver's licenses ("among other things"), and that once the Driver's License Access and Privacy Act "goes into effect [he] will be required under the terms of [that] law to issue non-commercial driver's licenses to undocumented immigrants, and will be subject to the record-keeping and information-sharing restrictions thereunder" which he claims conflicts with federal immigration laws. (Dkt. 1, ¶¶ 32 – 33). In his Complaint, plaintiff Merola claims that if he, as County Clerk "refuses to administer and comply with" the Driver's License Access and Privacy Act he "would potentially face significant consequences including … removal from office", but if he instead "complies with the requirements" of said law, "he would likely be in violation of" federal immigration law and would risk possible "prosecution by federal authorities." (Dkt. 1, ¶ 77). The Merola Complaint claims that as a result, the Driver's License Access and Privacy Act is unconstitutional and void pursuant to the Supremacy Clause of the United States Constitution ("the Supremacy Clause"). (Dkt 1, ¶ 7).

The Merola Complaint's First Cause of Action seeks a judgment declaring that the New York State Driver's License Access and Privacy Act is preempted under the Supremacy Clause since it allegedly "stands as an obstacle to the administration of federal immigration laws and/or seeks to regulate a field of exclusive federal authority and is therefore unconstitutional"; and further declaring that provisions of New York Vehicle & Traffic Law §§ 201 and 502 (as amended by the Driver's License Access and Privacy Act) conflict with federal law and are therefore preempted under the Supremacy Clause. (Dkt 1, "First Cause of Action" ¶¶ 68 – 78,

2

"Wherefore" clause, p. 21).   The Merola Complaint's "Second Cause of Action" seeks an injunction enjoining Governor Cuomo, Attorney General James and DMV Commissioner Schroeder from implementing the Driver's License Access and Privacy Act and from taking punitive action against plaintiff "or any similarly-situated county clerk" (including removing them from office) for refusing to comply with said State law.  (Dkt 1, "Second Cause of Action" ¶¶ 79 – 88, "Wherefore" clause, p. 21).

Weeks *before* the Merola Complaint was filed, a mirror-image action challenging the same Driver's License Access and Privacy Act, against the exact same defendants, making essentially the same claims, setting forth virtually identical causes of action, and requesting virtually the same relief was filed in the Western District of New York ("W.D.N.Y.") by the County Clerk of Erie County.    That pre-existing action, entitled Kearns v. Cuomo, et al. W.D.N.Y. Case No. 1:19-cv-0902 (EAW) was previously filed in the W.D.N.Y. on July 8, 2019 by Michael Kearns "in his official capacity as Clerk of the County of Erie, New York", and also names Governor Cuomo, Attorney General James and DMV Commissioner Schroeder as the defendants.  A true and complete copy of the Complaint in Kearns v. Cuomo, et al. W.D.N.Y. Case No. 1:19-cv-0902 (the "Kearns Complaint") is attached hereto as **Appendix "A"** for the Court's convenience.  Like the subsequently filed Merola Complaint, the first-filed Kearns Complaint also challenges the New York State Driver's License Access and Privacy Act, claiming that said State law conflicts with federal immigration law and requires plaintiff Kearns, as a County Clerk, to decide whether to comply with New York law on the one hand, or federal law on the other.  (Kearns Complaint, ¶ 1).  In his Complaint, plaintiff Kearns (like plaintiff Merola) notes that as County Clerk, he is an agent of the DMV Commissioner in connection with issuing driver's licenses (among other things), and that once the Driver's License Access and

3

Privacy Act goes into effect he will be required under the terms of said law to issue non-commercial driver's licenses to undocumented immigrants, and will be subject to that law's record-keeping and information-sharing restrictions. (Kearns Complaint, ¶¶ 1, 13, 27 - 33). The Kearns Complaint (like the subsequently filed Merola Complaint) also claims that if plaintiff Kearns, as County Clerk, "refuses to implement" the Driver's License Access and Privacy Act he risks "removal from office", but if he "implements" said law, "he risks prosecution" under federal law. (Kearns Complaint, ¶¶ 1, 14 - 17, 22). As is the case with the subsequent Merola Complaint, the first-filed Kearns Complaint also claims that the Driver's License Access and Privacy Act is unconstitutional and void pursuant to the Supremacy Clause. (Kearns Complaint, ¶ 2).

As is the case with the Merola Complaint's First Cause of Action, the Kearns Complaint's First Cause of Action also seeks a judgment declaring that the New York State Driver's License Access and Privacy Act is unconstitutional and preempted under the Supremacy Clause, since it allegedly "stands as an obstacle" to the administration of federal immigration laws and/or "regulates a field that Congress has determined to be within its exclusive governance"; and further declaring that provisions of New York Vehicle & Traffic Law §§ 201 and 502 (as amended by the Driver's License Access and Privacy Act) conflict with federal law and are therefore preempted under the Supremacy Clause. (Kearns Complaint, ¶¶ 60, 61, 66, "First Cause of Action" ¶¶ 51 – 66, "Wherefore" clause, p.p. 17 - 19). As is also the case with the Merola Complaint's Second Cause of Action, the Kearns Complaint's Second Cause of Action seeks an injunction enjoining Governor Cuomo, Attorney General James and DMV Commissioner Schroeder from implementing the Driver's License Access and Privacy Act and from removing plaintiff from office "or utilizing any other enforcement mechanism" for failing

to comply with said State law.  (Kearns Complaint, ¶ 2, "Second Cause of Action" ¶¶ 67 – 74, "Wherefore" clause, p. 26).

In short, both the first-filed W.D.N.Y. Kearns action and the subsequently filed N.D.N.Y. Merola action: (i) are brought by plaintiffs in their official capacity as New York State County Clerks;  (ii) allege that the Driver's License Access and Privacy Act will affect both plaintiffs, in their capacity as County Clerks (and all County Clerks in New York State) in identical ways; (iii) are brought against the same three defendants; (iv) allege that as County Clerks, plaintiffs act as agents of the DMV Commissioner in issuing driver's licenses; (v) allege that once in effect, the Driver's License Access and Privacy Act will require them to provide driver's licenses to undocumented immigrants and to follow said State law's record-keeping and information-sharing restrictions; (vi) allege that the Driver's License Access and Privacy Act conflicts with federal immigration laws; (vii) allege that under the Supremacy Clause, the Driver's License Access and Privacy Act is unconstitutional and preempted by federal law; and (viii) seek virtually the same state-wide relief (indeed, if the declarative relief and injunction against implementing the  Driver's License Access and Privacy Act sought by either Kearns *or* Merola were to be granted, it would apply equally to each plaintiff and to all County Clerks in New York State who act as agents of the DMV pursuant to Vehicle and Traffic Law § 205 [1]).

On July 17, 2019 (before the Merola Complaint was even filed), plaintiff Kearns filed a motion for a preliminary injunction in his W.D.N.Y. action, seeking to enjoin defendants' enforcement and implementation of the Driver's License Access and Privacy Act (state-wide)

---

1 Pursuant to Vehicle and Traffic Law § 205 (1) "The clerk of each county, except the counties of Rockland, Albany, Westchester, Suffolk, Nassau, Onondaga, Bronx, Kings, Queens, Richmond and New York, shall act as the agent of the [DMV] commissioner …."  Thus, the County Clerk of every county within the W.D.N.Y. acts as the agent of the DMV regarding the DMV business set forth in VTL § 205.

during the pendency of that action. (*See*, Docket for <u>Kearns v. Cuomo, et al.</u> W.D.N.Y. Case No. 1:19-cv-0902, at Dkt. 3).  The Court in <u>Kearns</u> then set a briefing schedule for that preliminary injunction motion, though neither defendants' opposition nor plaintiff Kearns' reply have yet been filed.  (<u>Id</u>., at Dkt. 11).   Further, the Attorney General for the State of Connecticut has already requested to file an amicus brief in the <u>Kearns</u> matter and said request was granted by the W.D.N.Y.  (<u>Id</u>., at Dkts. 15 and 16). [2]

Despite all of the above - rather than joining as a plaintiff in the <u>Kearns</u> matter, or seeking permission to file an amicus brief in said action, or simply abiding by the eventual ruling by the assigned District Judge in the already-filed <u>Kearns</u> case - plaintiff Merola later proceeded to file his own duplicative and superfluous lawsuit in the N.D.N.Y.

Notably, both the Kearns and Merola Complaints concern issues of law and statutory interpretation, and thus defendants in the <u>Kearns</u> matter (who are also represented by the New York State Office of the Attorney General) plan on filing a cross-motion to dismiss that action in its entirety when they submit their opposition to plaintiff Kearns' motion for a preliminary injunction.  If the present <u>Merola</u> action is not transferred to the W.D.N.Y. (in anticipation of then seeking to consolidate this action with the <u>Kearns</u> matter) those same defendants plan to submit another motion to dismiss in the present action.

Thus - in order to prevent unnecessarily duplicative litigation; promote judicial economy and avoid duplication of judicial effort; achieve comprehensive disposition of litigation among parties with identical status over the same issues; protect the parties from the vexation of concurrent litigation in different venues over the same subject matter; and eliminate the risk of

---

2 Notably, on August 6, 2019, the Niagara County Legislature voted to file their own lawsuit challenging the Driver's License Access and Privacy Act. (see, https://www.wkbw.com/news/local-news/niagara-county-to-sue-over-green-light-law ). As Niagara County is located within the W.D.N.Y. said lawsuit will presumably also be brought in said district.

inconsistent adjudication on the same issue from different courts within the same Circuit - defendants now move this Court requesting an order transferring venue of this action to the Western District of New York, pursuant to 28 U.S.C. § 1404(a), in anticipation of then requesting that this matter be consolidated with the first-filed <u>Kearns</u> case.

In the alternative, defendants request an order staying the present matter pending decisions by the court in the mirror-image <u>Kearns</u> case on that plaintiff's motion for a preliminary injunction (which will apply equally to plaintiff Merola) and the <u>Kearns</u> defendants' imminent motion to dismiss.

Defendants further request that this Court issue an order staying defendants' time to respond to the Complaint in this <u>Merola v. Cuomo, et al.</u> matter pending this Court's decision on the present motion to transfer.

**ARGUMENT**

**POINT I**

**THIS ACTION SHOULD BE TRANSFERRED
TO THE WESTERN DISTRICT OF NEW YORK**

28 USC §1404(a) states: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Generally, the court has broad discretion in determining a motion for transfer where it finds, as a threshold matter, that the action "might have been brought" in the transferee court. *See* <u>Fowlkes v. Rodriguez</u>, 584 F.Supp.2d 561, 577 (E.D.N.Y. 2008) (citations omitted). Thus, when considering whether to transfer venue of a federal action, the court should initially examine whether the lawsuit could have been properly brought in the transferee venue.

### a.  **The W.D.N.Y. is a proper venue for the present matter**

Considering the issues alleged in the Merola Complaint, and the particular defendants sued therein, the present action could - like the <u>Kearns</u> action - have been properly brought in the W.D.N.Y.

Pursuant to 28 USC §1391(b)(1), venue in a civil action is proper in any judicial district "in which any defendant resides, if all defendants are residents of the State in which the district is located".  As alleged in the Kearns Complaint, venue in that indistinguishable action "is proper in the [W.D.N.Y.] because Defendant Schroeder resides within this judicial district and both he and Defendants Cuomo and James are residents of New York State, and because it is where a substantial part of the events giving rise to the claim have occurred."  (Kearns Complaint, **Appendix "A"**, ¶ 8).  As is set forth in the accompanying Declaration of DMV Commissioner Mark J. F. Schroeder ("Schroeder Declaration"). he does indeed live within the W.D.N.Y. (in Buffalo, New York).  (Schroeder Declaration ¶ 5).

Further, where public officials are sued in their official capacity, residence for purposes of determining a proper venue is where they perform their official duties.  <u>Kirk v. N.Y. State Dep't of Educ.</u>, 2008 U.S. Dist. LEXIS 24322 at * 7 - 8 (W.D.N.Y. 2008).  It has been repeatedly held by courts in this and other Circuits "that a state official may have more than one official residence, if he maintains a satellite office in another judicial district" and/or the state agency in question has a substantial official presence in the judicial district in question.  <u>Kirk v. N.Y. State Dep't of Educ.</u>, 2008 U.S. Dist. LEXIS 24322 at * 8 - 9 (W.D.N.Y. 2008). (Finding that a case challenging the constitutionality of a State statute filed against the Commissioner of the NYS Department of Education, and said agency, headquartered in the N.D.N.Y., could be properly brought in the W.D.N.Y. under 28 USC §1391(b)(1) since the Dep't of Educ.

8

maintained satellite offices there); <u>Westchester Advocates for Disabled Adults v. Pataki</u>, 931 F.Supp. 993, 1002 - 1005 (E.D.N.Y. 1996) (State agencies/officials can be a resident in a district other than the Northern District of New York, its official residence at the state capitol, on the basis of additional offices which count as "official residences" for venue purposes), *injunction vacated on other grounds at* 113 F.3d 394 (2d Cir. 1997); <u>St. Regis Mohawk Tribe v. State of New York</u>, 774 F. Supp. 185, 186 fn. 1 (S.D.N.Y. 1991); <u>Buffalo Teachers Federation, Inc. v. Helsby</u>, 426 F. Supp. 828, 829 - 830 (S.D.N.Y. 1976); *see, also*, <u>Bay Cnty. Democratic Party v. Land</u>, 340 F. Supp. 2d 802, 806 – 808 (E.D. Mich. 2004); <u>Cook Group v. Purdue Research Found</u>, 2002 U.S. Dist. LEXIS 13277 (S.D. Indiana 2002); <u>Doe v. Casey</u>, 601 F. Supp. 581 (D.D.C. 1985), *reversed on other grounds at* 796 F.2d 1508 at * 14 - 18 (D.C. Cir. 1986).

In <u>Westchester Advocates</u>, the court held that venue in the E.D.N.Y. was appropriate for a case brought against the Commissioner of a State agency that was headquartered in the N.D.N.Y.  The court found that "the [state] agency of" the defendant Commissioner "has at least four offices within the Eastern District", and as a result "has a substantial official presence in this district and thus, [the Commissioner] in his official capacity 'resides' in the Eastern District" (as well as the N.D.N.Y.) for purposes of venue under 28 USC §1391(b)(1). <u>Westchester Advocates for Disabled Adults v. Pataki</u>, 931 F. Supp. 993, 1004 - 1005 (E.D.N.Y. 1996).  In doing so, that court drew an analogy between determining propriety of venue for a State agency and for a corporation, observing:

> [T]he provisions of the venue statute applicable to a corporation might appropriately be applied by analogy to the State defendants. "[A] corporation shall be deemed to reside in any district in [the] State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 USC §1391(b).  As noted above, the agency of State defendant, Commissioner Thomas Maul, OMRDD, has at least four offices within the Eastern District and thus he would be subject to personal jurisdiction in his official capacity at each, on the basis of presence in the district, were

9

the district a separate State. Thus, clearly, under this test as well, were he a corporate agent sued in his official capacity, he would "reside" in the Eastern District for the purposes of the venue provision.

Id.  As the Westchester Advocates court then held, "because at least one State defendant is a defendant resident in the Eastern District, venue may properly be exercised over other defendants resident in other districts located in New York State" pursuant to 28 USC §1391(b)(1). Id, at 1005.

As is set forth in the accompanying Declaration of Mark J. F. Schroeder, not only does he personally reside within the W.D.N.Y., he also works as DMV Commissioner in Buffalo, NY as well as in Albany, NY, and works at a DMV office in Buffalo on a weekly basis. (Schroeder Declaration ¶ 4).

As is also described in the accompanying Schroeder Declaration, NYS DMV has five (5) offices within the W.D.N.Y., out of which DMV employees conduct criminal investigations, perform internal audits, conduct road tests, execute oversight of automobile dealers, and run public automobile inspection stations and repair shops.  (Schroder Declaration ¶ 8).   Indeed, nearly sixty Department of Motor Vehicles employees are currently assigned to primary work locations in the seventeen (17) counties within the W.D.N.Y. (Schroeder Declaration ¶ 9).

Further, pursuant to Vehicle and Traffic Law § 205, the County Clerk of each county in New York State, including the seventeen (17) counties within the W.D.N.Y, is the agent of the DMV for the transaction of specified DMV business, including the registration of motor vehicles and the issuance of licenses and non-driver identifications. Such work is conducted from thirty-eight (38) separate offices designated for the transaction of DMV business within the W.D.N.Y. NY VTL § 205 (Schroeder Declaration ¶¶ 6, 7).  Notably, each County Clerk acting as an agent of the DMV retains 12.7 % of fees for motor vehicle-related services, while the remainder of

those fees are collected by the DMV.  (Schroeder Declaration ¶ 7).  Those fees retained by County Clerks acting as agents of the DMV fund the operation of DMV functions carried out by said County Clerks.  (Id.).

In addition, DMV Commissioner Schroeder works with, directs and supervises DMV employees with a primary work location within the W.D.N.Y., and also provides ongoing instruction, support, and supervision in regard to DMV business to the County Clerks acting as his agents within the W.D.N.Y.  (Schroeder Declaration ¶ 10).

Thus, the present action could have been properly brought in the W.D.N.Y. pursuant to 28 USC §1391(b)(1), as defendant Schroeder resides in the W.D.N.Y. and personally performs official work in the W.D.N.Y.; the DMV itself has a substantial official presence in said district and conducts substantial work there through its employees in five (5) offices and through its County Clerk agents in another thirty-eight (38) locations designated for the conduct of DMV business; and the remaining defendants reside in New York State.

The present action could also have been properly brought in the W.D.N.Y. under 28 USC §1391(b)(2), pursuant to which venue is proper in a district where a substantial part of the events "giving rise to the claim", have occurred or will occur.  The Driver's License Access and Privacy Act will be implemented state-wide, and both the Merola and Kearns Complaints allege that County Clerks (and presumably their employees) throughout the entire State of New York will be impacted by said law when it comes into effect.  Indeed, as noted above, the Merola Complaint seeks an injunction enjoining defendants from implementing the Driver's License Access and Privacy Act state-wide and from taking punitive action against plaintiff "*or any similarly-situated county clerk*" throughout the entire state.  (Emphasis added) (Dkt 1, "Second Cause of Action" ¶ 80).  Thus, plaintiff Merola's own Complaint explicitly seeks relief on behalf

11

of (and that will affect) every County Clerk (and their employees) in New York State, including those of the seventeen (17) counties within the W.D.N.Y.   As a result, the present matter could also have been brought in the W.D.N.Y. pursuant to 28 USC §1391(b)(2).

Thus, under these particular facts, with DMV Commissioner Schroeder named as a defendant, the present matter could indeed have been properly brought in the W.D.N.Y.

### b.  **Pursuant to the First-Filed rule, this matter should be transferred to the W.D.N.Y.**

It is well-settled that pursuant to the "First-Filed Rule", a district court may dismiss, stay or transfer a suit that is duplicative of another earlier-filed federal court suit involving identical or substantially similar parties and claims.  Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2nd Circuit 2000); First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 79 - 80 (2nd Circuit 1989); Andreas-Moses v. Hartford Fire Inc., Co., 2017 U.S. Dist. LEXIS 180420 (N.D.N.Y. 2017).  "The first to file rule embodies considerations of judicial administration and conservation of resources" and transferring a case to another district where a duplicative earlier-filed action is venued "gives proper weight to the necessity of avoiding duplicative litigations, thereby conserving judicial resources."   First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76 (2nd Circuit 1989).  "Deference to the first filing" recognizes that parties to a lawsuit filed in "a court of competent jurisdiction should be free from the vexation of concurrent litigation over the same subject matter" in another venue.  AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 722 (2nd Circuit 2009).

As was explained by the Northern District of New York in Andreas-Moses v. Hartford Fire Inc., Co.:

Generally speaking, the first-filed rule dictates that, when identical **or substantially**

**similar** parties and claims are present in two separate lawsuits, the first-filed lawsuit is presumptively entitled to priority.

Under the first-filed rule, a district court is vested with broad discretion to dismiss, stay, or transfer a suit that is found to be duplicative of a previously filed action. This discretion arises from the court's power to administer its docket to conserve judicial resources, and to promote the efficient and comprehensive disposition of cases. A court should consider which course of action will most likely avoid duplication of judicial effort, avoid vexatious litigation in multiple forms, achieve comprehensive disposition of litigation among parties over related issues, and eliminate the risk of inconsistent adjudication.

(Emphasis added) (*internal citations, quotation marks and brackets omitted*) <u>Andreas-Moses v.</u> <u>Hartford Fire Inc., Co.</u>, 2017 U.S. Dist. LEXIS 180420 at *5 - 6 (N.D.N.Y. 2017), *Report-Recommendation adopted by* 2017 U.S. Dist. Lexis 193517 (N.D.N.Y. November 22, 2017).

Indeed, the Second Circuit has held:

It is well-established … that when a case is brought in one federal district court embraces essentially the same transactions as those in a case pending in another federal district court, the latter court may enjoin the suitor in the more recently commenced case from taking any further action in the prosecution of that case.

Even in the absence of such an injunction, however, the second court may be bound to stay its consideration of an action in deference to the first-filed proceedings. While the decision whether or not to stay or dismiss a proceeding rests within a district judge's discretion, normally sound judicial discretion dictates that the second court decline its consideration of the action before it until the prior action before the first court is terminated, and a district court can go beyond the allowable bounds of discretion when it refuses to stay or dismiss a duplicative suit.

<u>AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.</u>, 626 F.3d 699, 723 (2nd Circuit 2009), (*internal citations, quotation marks and brackets omitted*).

In <u>Andreas-Moses</u>, the N.D.N.Y. was faced with a scenario in which two separate lawsuits were brought in different forums against the same defendant insurance company, "asserting substantially similar wage-hour claims." <u>Andreas-Moses v. Hartford Fire Inc., Co.</u>, 2017 U.S. Dist. LEXIS 180420 at * 1 (N.D.N.Y. October 30, 2017), *Report-Recommendation*

13

*adopted by* 2017 U.S. Dist. Lexis 193517 (N.D.N.Y. November 22, 2017).  While the defendant in both actions was the same company, the plaintiffs were different individuals, but "[fell] into the same job classification."  Id.  There, the N.D.N.Y. observed that "while the claims asserted in" the two actions "[we]re not identical, they [we]re substantially similar", and as a result, the later-filed N.D.N.Y. action should be transferred to the venue where the first-filed suit had been brought (in Florida). Id. at * 8 – 9.

Here, as is discussed at length, above, both the first-filed W.D.N.Y. Kearns action and the subsequently filed N.D.N.Y. Merola action are brought against the exact same defendants and challenge the same statute, on the same grounds. Further, the plaintiffs in each action are different in name only as they have the exact same job classification as County Clerks, both bring their respective actions based wholly on the alleged effect they claim the Driver's License Access and Privacy Act will have on them in their capacity as County Clerks (serving as agents of DMV), and both claim that said State law will affect them in the same way.   Further still, both actions seek the same state-wide relief, and if the relief sought by either Kearns *or* Merola were to be granted, it would apply equally to each plaintiff (and indeed to all County Clerks in New York State who act as an agent of the DMV Commissioner pursuant to VTL § 205).

Thus, the Kearns and Merola cases are not only "substantially similar", they are virtually identical, and under the well-settled principal of the first-filed rule, primacy should be given to the first-filed Kearns case and the present matter should be transferred to the W.D.N.Y.

Notably, there are only two exceptions to the first-filed rule – namely where: (1) "special circumstances" are present; or (2) the balance of convenience clearly favors the later-filed action. Andreas-Moses, at * 6.

"The application of the special circumstances exception recognized in the Second Circuit

has been described as 'quite rare' and is generally limited to instances of manipulative or deceptive behavior by the first-filing plaintiff, such as where an improper anticipatory declaratory judgment action has been filed, or where forum shopping was the sole motivating factor for the choice of venue for the first suit."   <u>Id.</u>, *quoting* <u>Emplrs. Ins. v. Fox Entm't Grp., Inc.</u>, 522 F.3d 271 276 (2d Cir. 2008).  No such special circumstances exist here.

"Under the second exception [balance of convenience], courts consider those factors that inform a decision concerning a motion to transfer venue under 28 U.S.C. § 1404(a)."  <u>Id.</u>  As is discussed below, those factors, on the whole, favor transferring this matter to the W.D.N.Y.

### c. <u>This matter should be transferred to the W.D.N.Y. under 28 U.S.C. § 1404(a)</u>

28 USC §1404(a) provides:  "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  In examining whether a case should be transferred under 28 USC §1404(a), courts consider a variety of factors, including: (1) the convenience of witnesses, (2) the location of relevant documents and the relative ease of access to sources of proof, (3) the convenience of the parties, (4) the locus of the operative facts, (5) the availability of process to compel attendance of unwilling witnesses, (6) the relative means of the parties, (7) a forum's familiarity with the governing law, (8) the weight accorded a plaintiff's choice of forum, and (9) trial efficiency and the interests of justice based on the totality of the circumstances. <u>Andreas-Moses</u>, at * 6 – 7.

Here, a balance of these factors favors transfer of this matter to the W.D.N.Y. especially given the applicability of the first-filed rule.

In regard to "the availability of process to compel attendance of unwilling witnesses" and

15

the "forum's familiarity with the governing law" factors, there is essentially no difference between the W.D.N.Y. and the N.D.N.Y. in this matter, as both districts are located within the same state and both district courts are familiar with the governing law.

With respect to "the convenience of witnesses", "convenience of the parties", "the location of relevant documents and the relative ease of access to sources of proof" and the "relative means of the parties" factors, both the present matter and the Kearns case involve questions of law/statutory interpretation that are amenable to final adjudication *via* motion. Thus, it is anticipated that depositions, travel by witnesses, significant paper discovery and/or a trial will not be necessary.  If they are, though, these factors favor transferring this matter for subsequent consolidation with the first-filed Kearns case.  The defendants in the present matter are already being sued in the W.D.N.Y. over the exact same issues, have already appeared in the mirror-image Kearns case in said district and are already defending that case there.  Further, if testimony of witnesses were ever required (either at trial or depositions), those witnesses would be largely identical in both cases and are already going to have to appear in the W.D.N.Y. Further still, if the Kearns and Merola matters are not revolved *via* dispositive motion(s), and the present matter is not transferred to the W.D.N.Y. (for subsequent consolidation with the Kearns matter) two trials will then be held, in different districts, on the same issues, involving all or most of the same witnesses, with many if not most of the same exhibits resulting in an unnecessary and significant waste of judicial resources and great inconvenience to the witnesses in question.

In addition, even if relevant documents are located in the N.D.N.Y., courts have repeatedly held that the location of documents is no longer a significant factor in regard to a transfer analysis under 28 USC §1404(a) due to the advent and widespread availability of modern photocopying, scanning, email, faxing and electronic document production.  Scherillo v.

16

Dun & Bradstreet, Inc., 684 F. Supp. 2d 313, 326 - 327 (E.D.N.Y. 2010); Am. S.S. Owners Mut.

Prot. And Indem. Ass'n, Inc. v. Lafarge N. Am., Inc., 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007);

DiStefano v. Carozzi N. Am., Inc., 2002 U.S. Dist. LEXIS 23042 at * 11 - 12 (E.D.N.Y. Nov.

16, 2002).

In regard to the "locus of the operative facts" factor, the state statute challenged in this

matter will be implemented state-wide, and as is discussed above, both the Merola and Kearns

Complaints allege that County Clerks throughout the entire State of New York will be impacted

in the same way by said law when it comes into effect.  In addition, as is also discussed above,

the Merola Complaint specifically seeks an injunction enjoining defendants from taking punitive

action against plaintiff "*or any similarly-situated county clerk*" throughout the entire state.

(Emphasis added) (Dkt 1, "Second Cause of Action" ¶ 80).  Thus, plaintiff Merola's own

Complaint explicitly seeks relief on behalf of (and that will affect) every County Clerk (and their

employees) in New York State who act as an agent of the DMV Commissioner pursuant to VTL

§ 205, including those of the seventeen (17) counties within the W.D.N.Y.

Regarding "the weight accorded a plaintiff's choice of forum" factor, defendants

respectfully assert that this factor should be given significantly diminished weight under the

present circumstances, and in any event, it is certainly outweighed here by the other factors

relevant to a 28 USC §1404(a) transfer analysis and the applicability of the first-filed rule.

Knowing full well that plaintiff Kearns had already filed an essentially identical action in the

W.D.N.Y., and had also already filed a motion for a preliminary injunction (seeking the same

injunctive relief that plaintiff Merola would later request in his own subsequent Complaint),

plaintiff Merola moved forward with filing his own, entirely duplicative lawsuit in the N.D.N.Y.

Neither defendants, nor the courts, should be forced to expend the considerable additional time,

effort and resources necessary to defend/preside over two interchangeable cases, in two districts, challenging the same state statute, brought by plaintiffs in the same position making nearly identical arguments simply as a result of plaintiff Merola's predilection.   Given the circumstances described herein, there is no legitimate reason to choose the N.D.N.Y. over the W.D.N.Y., yet after plaintiff Kearns filed his action in the W.D.N.Y., and a judge was assigned to said matter, plaintiff Merola did so, anyway.   Neither defendants nor the courts should be burdened by that unreasonable choice.

Finally, with regard to the "trial efficiency and the interests of justice" factor, federal courts in this Circuit, and throughout the country have repeatedly held that transfer pursuant to 28 USC §1404(a) is warranted in the interests of justice in order to avoid duplicative litigation on the same issue, to prevent duplications of pleadings and motions, and to promote the interests of judicial economy. Andreas-Moses v. Hartford Fire Inc., Co., 2017 U.S. Dist. LEXIS 180420 at * 10 (N.D.N.Y. 2017), *Report-Recommendation adopted by* 2017 U.S. Dist. Lexis 193517 (N.D.N.Y. November 22, 2017);  Bank of Am., N.A. v. Wilmington Trust FSB, 943 F. Supp. 2d 417 (S.D.N.Y. 2013);  Employers Ins. of Wausau et al. v. Fox Entertainment Group, Inc., et al., 2008 U.S. Dist. LEXIS 76570 at *11 (S.D.N.Y. 2008) (In deciding whether to transfer a case to another district, district courts must consider "public interest factors" including the "private and public economy of avoiding multiple cases on the same issue.");  Kreisner v. Hilton Hotel Corp., 468 F. Supp. 176 (E.D.N.Y. 1979);  West Gulf Maritime Assoc. v. ILA Deep Sea Local 24, 751 F.2d 721, 728-29 (5th Cir. 1985) ("As between federal district courts, … the general principle is to avoid duplicative litigation. …The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result …. In particular, a court may … in its discretion

18

dismiss a declaratory judgment or injunctive suit if the same issue is pending in litigation elsewhere.") (*internal quotation marks omitted*); Weinberger v. Tucker, 391 F.Supp. 2d 241 (D.D.C. 2005) (One element encompassed in "interest of justice" factor is desire to avoid multiplicity of litigation on the same issue); Hooker v. Burson, 960 F. Supp. 1283 (M.D. Tenn. 1996) ("It is well established that the interest of justice alone may dictate transferring an action to another federal District Court. One consideration in determining whether transfer is in the interest of justice is the desire to avoid multiplicity of litigation involving" the same issue); Replas, Inc. v. Wall, 516 F. Supp. 59 (S.D. Ind. 1980) (In the interest of justice and for convenience of parties and witnesses, transfer is warranted where such transfer will prevent duplications of pleadings and motions, and generally provide for more expeditious resolution of issues); *See, also*, Ferens v. John Deere Co., 494 U.S. 516, 531 (1990) ("[T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.").

Here, a significant, and wholly unnecessary, multiplicity of litigation, duplication of pleadings and motions, and corresponding multiplication of effort on the part of the parties and the courts, will result if this matter is not transferred to the W.D.N.Y.  In addition, transfer of this matter to the W.D.N.Y. will eliminate the possibility of conflicting decisions on the same issue by sister district courts within the same Circuit.

Also, specifically in regard to the "trial efficiency" factor, as is discussed above, the first-filed Kearns matter is moving swiftly, and it is expected that the court in that matter will be relatively prompt in adjudicating said case (and the same issues involved in the present matter). Indeed, the Northern District of New York has specifically held that the average time from filing

to disposition is notably shorter in the W.D.N.Y. than in the N.D.N.Y., that "it is reasonably anticipated that" parties will "obtain a prompter resolution of their dispute in the Western District of New York than in this court", and that as a result, the "trial efficiency" factor of a 28 USC §1404(a) transfer analysis generally favors the W.D.N.Y. over the N.D.N.Y.  Jackson v. New York State, 2006 U.S. Dist. LEXIS 44778 at * 24 - 25 (N.D.N.Y. 2006).

Thus, the "trial efficiency and the interests of justice" factors strongly favor transferring this matter to the W.D.N.Y.

If this Court does not transfer this matter to the W.D.N.Y., defendants respectfully request that, in the alternative, this action be stayed pending decisions by the court in the Kearns case on that plaintiff's motion for a preliminary injunction (which will apply equally to plaintiff Merola) and the Kearns defendants' imminent motion to dismiss, in order to, at the very least, allow the parties and, ultimately, the court to take into account the decision of this Court's sister District Court in that first-filed mirror-image matter before further proceedings are held in this case.  Indeed, as is discussed above at p.p. 13 - 14, the Second Circuit has explicitly held that when two cases "embracing essentially the same" issue are brought in different districts, and the later-filed action is not transferred to the district in which the first-filed case was brought, the court presiding over the later-filed action "may be bound to stay its consideration of an action in deference to the first-filed proceedings."  AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 723 (2nd Circuit 2009).

## CONCLUSION

For the reasons stated above, defendants request that this Court transfer venue of this action to the Western District of New York; or, in the alternative, issue an order staying this

matter pending decisions by the court in the closely related <u>Kearns v. Cuomo, et al.</u> case

(W.D.N.Y. 1:19-cv-0902) on the <u>Kearns</u> plaintiff's motion for a preliminary injunction and the

<u>Kearns</u> defendants' imminent motion to dismiss in that matter; and defendants further request

that this Court issue an order staying defendants' time to respond to the Complaint in this <u>Merola</u>

<u>v. Cuomo, et al.</u> matter pending this Court's decision on the present motion to transfer.


Dated:  Albany, New York
        August 15, 2019


                                        LETITIA JAMES
                                        Attorney General of the State of New York
                                        Attorney for Defendants
                                        The Capitol
                                        Albany, New York  12224-0341


                                    By: <u>/s/</u> *Keith J. Starlin*

                                        Keith J. Starlin
                                        Assistant Attorney General, of Counsel
                                        Bar Roll No. 105187
                                        Telephone: (518) 776-2622
                                        Email: keith.starlin@ag.ny.gov