UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

FRANK J. MEROLA, in his official capacity as
Clerk of the County of Rensselaer, New York,

<em>Plaintiff</em>,

-against-

ANDREW M. CUOMO, in his official capacity as
Governor of the State of New York,
LETITIA A. JAMES, in her official capacity as
Attorney General of the State of New York, and
MARK J.F. SCHROEDER, in his official capacity as
Commissioner of the New York State Department of
Motor Vehicles,

<em>Defendants</em>.

1:19-CV-0899

(GLS/TWD)

---

## MEMORANDUM OF LAW IN REPLY AND FURTHER SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE

LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendants
The Capitol
Albany, New York  12224-0341

KEITH J. STARLIN
Assistant Attorney General, of Counsel
Telephone:  (518) 776-2622
Fax: (518) 915-7738 (Not for service of papers)

Dated: Albany, New York
      September 9, 2019

**Table of Contents**

PRELIMINARY STATEMENT……………………………………………...……..……..1

POINT I

    THIS ACTION SHOULD BE TRANSFERRED TO
    THE WESTERN DISTRICT OF NEW YORK………………...…………...……….1


CONCLUSION ……………………………………………………………………….10

## PRELIMINARY STATEMENT

Defendants respectfully submit this Memorandum of Law in reply to plaintiff's Dkt. 18 opposition to defendants' Dkt. 12 motion to transfer venue of this action to the Western District of New York ("W.D.N.Y.") pursuant to 28 U.S.C. § 1404(a) and in further support of said motion.

## POINT I

## THIS ACTION SHOULD BE TRANSFERRED
## TO THE WESTERN DISTRICT OF NEW YORK

28 USC §1404(a) states: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  When considering whether to transfer venue of a federal action, the court should initially examine whether the lawsuit could have been properly brought in the transferee venue. *See* Fowlkes v. Rodriguez, 584 F.Supp.2d 561, 577 (E.D.N.Y. 2008).

**a. The W.D.N.Y. is a proper venue for the present matter**

As was discussed in defendants' original memorandum of law in support of the present motion, considering the issues alleged in the Merola Complaint, and the particular defendants sued therein (specifically DMV Commissioner Schroeder), the present action - like the mirror-image Kearns v. Cuomo, et al. action (W.D.N.Y. Case No. 1:19-cv-0902) – could have been properly brought in the W.D.N.Y. pursuant to both 28 USC §§ 1391(b)(1) and (2).  (Dkt. 12-1, Point I (a)). As was also discussed in Point I (a) of defendants' original memorandum of law, where public officials are sued in their official capacity (as is the case here), residence for purposes of determining a proper venue is where they perform their official duties, and it has been repeatedly held by courts in this and other Circuits "that a state official may have more than one official residence, if he maintains a satellite office in another judicial district" and/or the state agency in

1

question has a substantial official presence in the judicial district in question. Kirk v. N.Y. State Dep't of Educ., 2008 U.S. Dist. LEXIS 24322 at * 8 - 9 (W.D.N.Y. 2008); Westchester Advocates for Disabled Adults v. Pataki, 931 F. Supp. 993, 1002 - 1005 (E.D.N.Y. 1996); St. Regis Mohawk Tribe v. State of New York, 774 F. Supp. 185, 186 fn. 1 (S.D.N.Y. 1991); Buffalo Teachers Federation, Inc. v. Helsby, 426 F. Supp. 828, 829 - 830 (S.D.N.Y. 1976);  *see, also*, Bay Cnty. Democratic Party v. Land, 340 F. Supp. 2d 802, 806 – 808 (E.D. Mich. 2004); Cook Group v. Purdue Research Found, 2002 U.S. Dist. LEXIS 13277 (S.D. Indiana 2002); Doe v. Casey, 601 F. Supp. 581 (D.D.C. 1985), *reversed on other grounds at* 796 F.2d 1508 at * 14 - 18 (D.C. Cir. 1986).

Plaintiff contends that Westchester Advocates for Disabled Adults v. Pataki, 931 F. Supp. 993 (E.D.N.Y. 1996), *injunction vacated on other grounds* 113 F.3d 394 (2d Cir. 1997), "was based on an outdated concept of personal jurisdiction that has been since overruled by the Supreme Court", allegedly in Daimler AG v. Bauman, 571 U.S. 117, 134 S. Ct. 746 (2014).  (Dkt. 18-2, p. 5). However, Westchester Advocates was neither overruled nor abrogated and it – along with the numerous other cases cited by defendants on this issue - illustrates that in this case, as with the Kearns case, venue is proper in the W.D.N.Y.  The Court in Westchester Advocates held that "the State defendant Thomas A. Maul, OMRDD Commissioner, has a substantial official presence in this district and thus, in his official capacity, 'resides' in the Eastern District." Westchester Advocates, 931 F. Supp. at 1004.  Here, Commissioner Schroeder has a substantial official presence within the W.D.N.Y. as he "resides" in that district (as well as in the N.D.N.Y.) for purposes of venue in a case where he is being sued in his official capacity.  Although the Westchester Advocates court analogized State defendants to corporations, that analogy is itself *dicta* and, in any event, is not undermined by subsequent caselaw.

The decision in Daimler AG v. Bauman, 571 U.S. 117, 134 S. Ct. 746 (2014) does not

support an argument that venue here is improper in the W.D.N.Y.  The Supreme Court did *not* hold in <u>Daimler</u>, as plaintiffs assert, that "general personal jurisdiction over a corporation is limited to the jurisdictions where a corporation maintains its principal place of business and is incorporated," let alone that venue is so limited for state agencies. (Dkt. 18-2, p. 5).[1]  Instead, the <u>Daimler</u> Court held that, for a court to exercise general jurisdiction over a foreign corporate defendant, a "corporation's 'affiliations with the State [must be] so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" <u>Daimler</u>, 571 U.S. at 139, *quoting* <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011). In finding that California was not an appropriate forum for that case, the Court reasoned that "sizable sales" within the State could not be enough to establish general jurisdiction, because the foreign corporation defendant would then be subject to suit nationwide. <u>Daimler</u>, 571 U.S. at 139.  "Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" <u>Id.</u>, *quoting* <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 473 (1985).

<u>Westchester Advocates</u>, like other venue cases, does not distinguish between general and specific jurisdiction, as the due process concerns raised in forum disputes like <u>Daimler</u> are not implicated in venue disputes, and, to the extent raised, can be addressed in motions to transfer. *See* <u>Westchester Advocates</u> 931 F. Supp at 1004; *compare, e.g.*, <u>Waldman v. PLO</u>, 835 F.3d 317 (2d Cir. 2016).  Here, none of the due process concerns raised in <u>Daimler</u> are present.  This is not a case where a corporate defendant is being haled into a foreign state or foreign country, and the State of New York is not asserting an inability to structure its primary conduct.  Indeed, the New York State

---

[1] Plaintiff's interpretation of <u>Daimler</u> appears to conflate 28 U.S.C. §§ 1391 (b)(1) and (2) with 28 U.S.C. § 1391(c)(2), which limits residency for a *plaintiff* that is an entity "with the capacity to sue and be sued" to the "judicial district where it maintains its principal place of business."

DMV has been, and presumably will continue to be sued in each of the four federal district courts throughout the State of New York.  Post-Daimler venue cases do not suggest that courts need to undertake a Daimler-style general jurisdiction analysis. Recent caselaw states that "[f]or the purposes of venue, state officers 'reside' in the district where they perform their official duties." Encarnacion v. Goord, No. 12-CV-6180 CJS, 2018 U.S. Dist. LEXIS 121064, at *9 (W.D.N.Y. July 18, 2018).  The Declaration of Commissioner Schroeder confirms that he performs his official duties within the W.D.N.Y. as well as in the N.D.N.Y., and thus, that he "resides" within the district for purposes of venue. (Dkt. 12-3, Schroeder Declaration, ¶¶ 4,10).

In sum, both specific and general jurisdiction exist here. With respect to general jurisdiction, Commissioner Schroeder resides in the W.D.N.Y. (as well as the N.D.N.Y.) because he performs official duties at an office there, and because of DMV's "continuous and systematic" activities and substantial presence within the W.D.N.Y.  Not only does the DMV Commissioner spend on average one day per week working at an office within the W.D.N.Y., but the DMV maintains five (5) offices within the W.D.N.Y., in which scores of DMV employees work (Dkt. 12-3, Schroeder Declaration, ¶¶ 8 9).  In addition, and vitally, working in their capacity as agents of the DMV, seventeen (17) County Clerks within the W.D.N.Y. maintain *thirty-eight (38) separate DMV offices specifically for the conduct of DMV business (including the issuance of licenses which will be affected by the Green Light Law) within the W.D.N.Y.*  (Dkt. 12-3, Schroeder Declaration, ¶¶ 6, 7).  Thus, this case (like Kearns) could have been properly brought in the W.D.N.Y. pursuant to 28 USC §1391(b)(1).

Further, the County Clerks acting as agents of the DMV with respect to relevant provisions of the Green Light Law also provide a basis for specific jurisdiction within the W.D.N.Y. pursuant to 28 U.S.C. § 1391(b)(2).  The seventeen (17) County Clerks within the W.D.N.Y. and their staff, acting as DMV agents within said district, are tasked with implementing relevant provisions of the

4

Green Light Law when it comes into effect. County Clerks acting as DMV agents will be bound and affected by the Green Light Law in precisely the same way in the W.D.N.Y. as in the N.D.N.Y.

In fact, in this particular case plaintiff Merola's own Complaint explicitly seeks relief on behalf of all "similarly-situated" County Clerks statewide, including all seventeen (17) such clerks within the W.D.N.Y. (Dkt 1, ¶ 80). Thus, the events forming the basis of plaintiff's claim - the pending administration and enforcement of the Green Light Law: will occur in the W.D.N.Y., just as they will in the N.D.N.Y.; will affect all seventeen (17) County Clerks within the W.D.N.Y. in precisely the same way they affect plaintiff (and County Clerks within the N.D.N.Y.); and plaintiff's own Complaint explicitly seeks relief on behalf of all seventeen (17) County Clerks within the W.D.N.Y. As a result, this case could also have been properly brought in the W.D.N.Y. pursuant to 28 USC §1391(b)(2).

Thus, under these particular facts, with DMV Commissioner Schroeder named as a defendant solely in his official capacity, and the plaintiff's own Complaint alleging that all County Clerks throughout the State will be affected by the Green Light Law in exactly the same way he will be, and specifically asking for relief on their behalf, the present matter could indeed have been properly brought in the W.D.N.Y.

**b. Pursuant to the First-Filed rule, this matter should be transferred to the W.D.N.Y.**

As was discussed in Point I (b) of defendants' original memorandum of law, it is well-settled that pursuant to the "First-Filed Rule", a district court may dismiss, stay or transfer a suit that is duplicative of another earlier-filed federal court suit involving identical *or substantially similar* parties and claims. Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2nd Circuit 2000); First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 79 - 80 (2nd Circuit 1989); Andreas-Moses v. Hartford Fire Inc., Co., 2017 U.S. Dist. LEXIS 180420 (N.D.N.Y. 2017). (Dkt. 12-1, p.p. 12 – 15).

In his memorandum of law in opposition, plaintiff quotes from the decision in Bukhari v. Deloitte & Toucher, LLP, 2012 WL 59904815, at * 3 (S.D.N.Y. Nov. 26, 2012) stating that "the classic context for applying the [first-filed] rule is where mirror-image lawsuits between the same parties are filed in different venues …."  (Dkt. 18-2, p. 8).  Yet as Bukhari itself notes, and as was discussed in defendants' original memorandum of law (Dkt. 12-1, p. 14), that is not the only context in which the first-filed rule applies, and it has been specifically held that "[g]enerally speaking, the first-filed rule dictates that, when identical **or substantially similar** parties and claims are present in two separate lawsuits, the first-filed lawsuit is presumptively entitled to priority." (Emphasis added). Andreas-Moses v. Hartford Fire Inc., Co., 2017 U.S. Dist. LEXIS 180420 at *5 - 6 (N.D.N.Y. 2017), *Report-Recommendation adopted by* 2017 U.S. Dist. Lexis 193517 (N.D.N.Y. November 22, 2017).   Plaintiff appears to argue that when the parties and/or issues are not entirely identical, but are instead "substantially similar" the first-filed rule should only be applied to "run of the mill class action lawsuit[s]", yet fails to cite to any authority in support of that claim.  (Dkt. 18-2, p. 9).   Indeed, the only rationale offered by plaintiff in support of that claim is his allegation that "[t]he concerns of adjudicating the claims of overlapping classes of putative class plaintiffs are unique to class actions", yet those same general concerns are, in fact, present here.

As was discussed at length in defendants' original memorandum of law, both the first-filed Kearns action, and the present Merola action: (i) are brought by plaintiffs with the exact same status in their official capacity as County Clerks;  (ii) allege that the Driver's License Access and Privacy Act will affect both plaintiffs, in their capacity as County Clerks (and all County Clerks in New York State acting as DMV agents) in identical ways; (iii) are brought against the same three defendants; (iv) allege that as County Clerks, plaintiffs act as agents of the DMV Commissioner in issuing driver's licenses; (v) allege that once in effect, the Driver's License Access and Privacy Act

will require them to provide driver's licenses to undocumented immigrants and to follow said State law's record-keeping and information-sharing restrictions; (vi) allege that the Driver's License Access and Privacy Act conflicts with federal immigration laws; (vii) allege that under the Supremacy Clause, the Driver's License Access and Privacy Act is unconstitutional and preempted by federal law; and (viii) seek virtually the same state-wide relief.  Further, if the declarative relief and injunction against implementing the Driver's License Access and Privacy Act sought by either Kearns *or* Merola were to be granted, it would apply equally to each plaintiff and to the entire class of County Clerks throughout New York State who act as DMV agents pursuant to Vehicle and Traffic Law § 205.  Thus, the <u>Kearns</u> and <u>Merola</u> cases are not only "substantially similar", they are virtually identical, and under the well-settled principal of the first-filed rule, primacy should be given to the first-filed <u>Kearns</u> case and the present matter should be transferred to the W.D.N.Y.

While plaintiff claims that the first-filed <u>Kearns</u> matter is not a "mirror-image" of the present case, the only argument offered by him in support of that claim is that: (1) Rensselaer County has some type of "Memorandum of Agreement with U.S. Immigration and Customs Enforcement"; and (2) that "Rensselaer County is located on a major interstate" within "a three hour drive of three metropolitan cities" and "within the same District as the St. Regis Mohawk Reservation (Akwasasne)" (Dkt. 18-2, p.p. 9 – 10).  These assertions, though, are merely made in an unsworn memorandum of law signed by an attorney and do not constitute evidence.  Further, even if they did constitute admissible evidence, they are wholly irrelevant to the statutory interpretation and other matters of law at issue in the present litigation.

### c.   <u>This matter should be transferred to the W.D.N.Y. under 28 U.S.C. § 1404(a)</u>

As was discussed at length in Point I (c) of defendants' original memorandum of law, the factors to be considered concerning a motion to transfer venue under 28 U.S.C. § 1404(a), on the

whole, favor transferring this matter to the W.D.N.Y.

In his memorandum of law in opposition, plaintiff argues that "the locus of the operative facts" factor weighs against transfer, claiming that "other than the fact that Defendant Schroeder appears to maintain a personal residence in W.D.N.Y. and allegedly performs unrelated work from in [sic] W.D.N.Y. approximately once per week, all of the other facts relevant to this case point to the N.D.N.Y."  (Dkt. 18-2, p. 12).  Yet as was discussed above, and in defendants' original memorandum of law (Dkt. 12-1, p.p. 17 – 18), the entire State of New York comprises "the locus of operative facts" relevant here, every County Clerk throughout the W.D.N.Y. will be affected by the Green Light Law in the exact same way as those throughout the rest of the State and plaintiff Merola's own Complaint explicitly seeks relief on behalf of (and that will affect) every County Clerk (and their employees) in New York State who act as an agent of the DMV Commissioner pursuant to VTL § 205, including those of the seventeen (17) counties within the W.D.N.Y.

Plaintiff also erroneously claims that "Defendants … do not discuss 'the convenience of the parties' factor", yet defendants did, in fact, specifically discuss said factor in Point I (c) of their original memorandum of law and make clear that said factor favors transferring this matter for subsequent consolidation with the first-filed Kearns case. (See, Dkt. 12-1, p.p. 16 – 17).  While plaintiff then claims that the "convenience of the parties" factor "cuts against transferring this case to W.D.N.Y.", his only rationale for that claim is that it would be "more convenient and less expensive for Mr. Merola to litigate this case locally, where his counsel of choice is located, rather than in Rochester", and that "Defendants' primary attorney in this action is also based in Albany, New York."  Yet defense counsel has multiple offices within the W.D.N.Y. and will not be inconvenienced by transferring this matter to the W.D.N.Y. and plaintiff's own counsel – Harris Beach PLLC – also has offices within the W.D.N.Y., including offices in Buffalo, New York and

Rochester, New York.[2]  Further, plaintiff concedes that "it is unlikely that substantial evidentiary proceedings will be required in this case" (Dkt. 18-2, p. 12) and that "[t]his matter is now ripe for adjudication by this Court on the merits of Mr. Merola's claims", presumably by way of dispositive motion. (Dkt. 12-1, p.p. 13 – 14).

Finally, plaintiff alleges that the "trial efficiency and the interests of justice" factor under 28 U.S.C. § 1404(a) weighs against transfer, claiming without supporting evidence that "there is a substantial possibility" that transferring this action to the W.D.N.Y. would delay an adjudication of the matters at issue in this case.  (Dkt. 18-2, p.p. 13 – 14).  As was discussed at length in defendants' original memorandum of law, though, this factor actually weighs heavily in favor of transferring this matter to the W.D.N.Y.  (Dk. 12-1, p.p. 18 – 20).  There is no realistic indication that transferring this case to be consolidated with the mirror-image Kearns case will substantially delay an adjudication of the matters at issue in this matter.  Indeed, the W.D.N.Y. in Kearns is, even now, in the process of adjudicating the same issues relevant to the present matter.  As the Docket for Kearns v. Cuomo, et al. (W.D.N.Y. Case No. 1:19-cv-0902) shows, and as was discussed in defendants' original memorandum of law (Dkt. 12-1, p.p. 5, 20), the Kearns matter is moving swiftly, in that: plaintiff Kearns has already filed a motion for a preliminary injunction, (the adjudication of which will identically affect both plaintiff Merola and plaintiff Kearns); the Kearns defendants have filed a motion to dismiss and opposition to plaintiff Kearns' motion for injunctive relief; amicus briefs on behalf of non-parties including the Connecticut Attorney General have already been filed; plaintiff Kearns' opposition to defendants' motion to dismiss, and reply in regard to his motion for injunctive relief, is due September 16, 2019; defendants' reply regarding their

---

[2] See, https://www.harrisbeach.com/offices/ .  At any rate, the location of plaintiff's counsel is not a relevant factor with regard to a motion to transfer venue.  Spiciarich v. Mexican Radio Corp., 2015 U.S. Dist. LEXIS 89924 at * 28 (S.D.N.Y. July 10, 2015), citing Southland Terrace Assocs. V. Mellon Bank, N.A., 874 F. Supp. 69, 71 (S.D.N.Y. 1995)

motion to dismiss is due September 27, 2019; and oral argument on the aforementioned motions is scheduled for October 23, 2019 – one day *before* the October 24, 2019 Rule 16 conference scheduled in the present matter.  There is no legitimate reason to believe that transferring this case to the W.D.N.Y. for consolidation with the <u>Kearns</u> matter will substantially delay adjudication of the issues relevant to the present matter, especially since the first-filed <u>Kearns</u> case is clearly proceeding toward a relatively swift final adjudication of the same issues involved in the present matter.  Indeed, the primary source of delay in this case was plaintiff's own insistence on filing the present matter in the first place, instead of simply joining the <u>Kearns</u> matter as a plaintiff (or filing an amicus brief in that case); his filing of this action weeks after <u>Kearns</u> was filed; and his refusal to simply consent to transfer this case to the W.D.N.Y. for reasons that remain wholly unexplained.

## CONCLUSION

For the reasons stated above, defendants request that this Court transfer venue of this action to the Western District of New York; or, in the alternative, issue an order staying this matter pending decisions by the court in the closely related <u>Kearns v. Cuomo, et al.</u> case (W.D.N.Y. 1:19-cv-0902) on the <u>Kearns</u> plaintiff's motion for a preliminary injunction and the <u>Kearns</u> defendants' motion to dismiss in that matter.

Dated: Albany, New York
      September 9, 2019              LETITIA JAMES
                                  Attorney General of the State of New York
                                  Attorney for Defendants
                                  The Capitol
                                  Albany, New York  12224-0341

                                  By: <u>/s/</u> *Keith J. Starlin*
                                  Keith J. Starlin
                                  Assistant Attorney General, of Counsel
                                  Bar Roll No. 105187
                                  Telephone: (518) 776-2622
                                  Email: keith.starlin@ag.ny.gov