UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

FRANK J. MEROLA, in his official capacity as
Clerk of the County of Rensselaer, New York,

                          Plaintiff,

        v.

                                          1:19-CV-0899 GLS/TWD

ANDREW M. CUOMO, in his official
Capacity as Governor of the State of New
York, et al.

                          Defendants.

_____

**UNITED STATES' MEMORANDUM IN SUPPORT
OF THE CONSTUTIONALITY OF 8 U.S.C. §§ 1373 AND 1644**

## <u>TABLE OF CONTENTS</u>

BACKGROUND ............................................................................................................... 2

    I.    Statutory Background ..................................................................................... 2

    II.   The New York Driver's License Access and Privacy Act ............................... 3

    III.  Procedural Background .................................................................................. 5

ARGUMENT ................................................................................................................... 5

    I.    The Court Should Resolve Defendants' Threshold Arguments First to Avoid
         Passing on the Constitutionality of Sections 1373 and 1644 or the Statutes'
         Application to the Act. ................................................................................... 6

    II.   Sections 1373 and 1644 Are Constitutional.................................................. 8

CONCLUSION................................................................................................................ 15

## **TABLE OF AUTHORITIES**

**Cases**

*Arizona v. United States,*
    567 U.S. 387 (2012) ..................................................................... 2, 8, 9, 11

*City and Cty. of San Francisco v. Sessions,*
    349 F. Supp. 3d 924 (N.D. Cal. 2018) ............................................... 12

*City of Chicago v. Sessions,*
    321 F. Supp. 3d 855 (N.D. Ill. 2018) ................................................ 12

*City of New York v. United States,*
    179 F.3d 29 (2d Cir. 1999)........................................................ *passim*

*Close v. Glenwood Cemetery,*
    107 U.S. 466 (1883) ............................................................................ 9

*Freilich v. Bd. of Dirs. of Upper Chesapeake Health, Inc.,*
    142 F. Supp. 2d 679 (D. Md. 2001) .................................................. 11

*Freilich v. Upper Chesapeake Health, Inc.,*
    313 F.3d 205 (4th Cir. 2002)............................................................. 11

*Gregory v. Ashcroft,*
    501 U.S. 452 (1991) ............................................................................ 9

*In re Nortel Networks Corp. Sec. Litig.,*
    539 F.3d 129 (2d Cir.2008)................................................................. 9

*McCulloch v. Maryland,*
    17 U.S. (4 Wheat.) 316 (1819) ......................................................... 14

*Murphy v. National Collegiate Athletic Association,*
    138 S. Ct. 1461 (2018) ............................................................. *passim*

*New York v. Dep't of Justice,*
    343 F. Supp. 3d 213 (S.D.N.Y. 2018), *appeal filed* No. 19-cv-267 (2d Cir. 2019)................ 12

*New York v. United States,*
    505 U.S. 144 (1992) ...................................................................... 9, 14

*North Dakota v. United States,*
    495 U.S. 423 (1990) ............................................................................ 8

*Nw. Austin Mun. Util. Dist. No. One v. Holder*,
    557 U.S. 193 (2009) ............................................................................................ 7

*Perez v. Campbell*,
    402 U.S. 637 (1971) .......................................................................................... 14

*Printz v. United States*,
    521 U.S. 898 (1997) .......................................................................... 1, 6, 9, 10

*Reno v. Condon*,
    528 U.S. 141 (2000) ........................................................................ 9, 10, 11, 13

*Spector Motor Serv. v. McLaughlin*,
    323 U.S. 101 (1944) ............................................................................................ 7

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) .............................................................................................. 6

## **Constitutional Laws**

U.S. Const. art. I, § 8, cl. 3 ............................................................................... 2

U.S. Const. art. I, § 8, cl. 4 ............................................................................... 2

## **Statutes**

8 U.S.C. § 1101 .................................................................................................. 2

8 U.S.C. § 1227(a) ............................................................................................ 14

8 U.S.C. § 1228 ................................................................................................ 14

8 U.S.C. § 1357(a)(1) ................................................................................. 13, 14

8 U.S.C. § 1373 ....................................................................................... *passim*

8 U.S.C. § 1644 ....................................................................................... *passim*

28 U.S.C. § 3702(1) .......................................................................................... 11

42 U.S.C. § 5779(a) .......................................................................................... 10

49 U.S.C. app. § 1305(a)(1) (1988) ................................................................. 13

## **Rule**

Fed. R. Civ. P. 5.1 .............................................................................................. 5

**Legislative Material**

S. Rep. No. 104-249 (1996)............................................................................................. 5

**Other Authority**

Press Release, New York State Senate, Senate Passes Driver's License Access and Privacy Act
(Green Light NY) (June 17, 2019),
    https://www.nysenate.gov/newsroom/press-releases/senate-passes-drivers-license-access-
    and-privacy-act-green-light-ny ............................................................................................8

The United States of America intervenes in this case for the limited purpose of defending the constitutionality of 8 U.S.C. §§ 1373 and 1644, which Defendants have challenged in this action. The Second Circuit previously upheld these statutes against a Tenth Amendment challenge in *City of New York v. United States*, 179 F.3d 29 (2d Cir. 1999). That conclusion was correct then and it remains correct today. Sections 1373 and 1644 do not contain any of the features that the Supreme Court has held raise Tenth Amendment concerns: the statutes do not require New York (or its subdivisions) to administer a federal program, to act on the federal government's behalf, to regulate its own citizens or, for that matter, to engage in legislation or regulation at all. Indeed, they fit comfortably within the exception to the commandeering doctrine for "the provision of information to the Federal Government" suggested by *Printz v. United States*, 521 U.S. 898, 918 (1997). At bottom, Sections 1373 and 1644 are modest information-sharing provisions that preempt efforts to hinder the federal government's enforcement of the immigration laws against individual aliens.

As the Court is aware, Defendants have raised several other arguments in support of their motion to dismiss that do not require the Court to address the constitutionality of Sections 1373 and 1644 or even whether New York's recently enacted Driver's License Access and Privacy Act conflicts with these provisions. Defendants take no position on New York's threshold arguments, other than to respectfully urge that the Court address those issues first. If the Court concludes that Plaintiff Frank Merola lacks capacity to bring his claims as a matter of state law, that he does not have standing, or that he does not have an enforceable claim under the Supremacy Clause—as Defendants argue—then the Court will not need to address either the constitutionality of Sections 1373 and 1644 or their possible application to New York's new law. But if this Court does reach the constitutional issue, it should uphold Sections 1373 and 1644.

**BACKGROUND**

I.    **Statutory Background**

"The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012); *see also* U.S. Const. art. I, § 8, cls. 3, 4.  Through the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*, and other related laws, Congress has exercised its authority to regulate the entry, presence, status, detention, and removal of aliens.

As relevant here, Section 1373 seeks to ensure that no obstacles will prevent information sharing between federal, state, and local governments that is crucial to operation of the immigration laws.  Section 1373(a) provides that "State" and "local government entit[ies] or official[s] . . . may not prohibit, or in any way restrict," any government entity or official from sharing "information regarding the citizenship or immigration status, lawful or unlawful, of any individual" with federal immigration authorities.  8 U.S.C. § 1373(a).  Section 1373(b) provides that "no person or agency may prohibit, or in any way restrict, a Federal, State, or local government entity from . . . [s]ending" to or "requesting or receiving" from federal immigration authorities "information regarding the immigration status, lawful or unlawful, of any individual[,]" "[m]aintaining" such information, or "[e]xchanging" such information with "any other . . . government entity."  *Id.* § 1373(b).  Section 1373(c) provides, in turn, that federal immigration authorities "shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."  *Id.* § 1373(c).  Section 1644 similarly provides that "no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from the

Immigration and Naturalization Service information regarding the immigration status, lawful or unlawful, of an alien in the United States." *Id.* § 1644.

## II.     The New York Driver's License Access and Privacy Act

Based on what New York describes as "the Legislature's view that an individual's citizenship or immigration status is irrelevant to the decision of whether to license him or her," Defs.' Mot. To Dismiss, ECF No. 30-1 at 16, New York enacted the Driver's License Access and Privacy Act (the Act), which directs New York's Department of Motor Vehicles (DMV) to accept various foreign documents—including, but not limited to, unexpired foreign passports, foreign consular documents, and foreign driver's licenses—as primary proof of identification for non-commercial driver's licenses.  Act § 3 at 3.[1]  Relevant provisions of the Act include the following:

*Lawful status not required*:  The Act states that proof of lawful presence in the United States is not required to obtain a standard license.  Act § 5 at 4.

*Inquiries into immigration status prohibited*:  The Act prohibits DMV from inquiring about an applicant's citizenship or immigration status for such licenses.  Act § 5 at 5.

*Prohibition on retention of documents used to prove age or identity*:  The Act bars DMV from retaining the documents (or copies of the documents) presented by applicants except for a limited period necessary to ensure their validity and authenticity.  *Id.*

*Prohibition on disclosure*:  The Act states that information maintained by DMV containing "the social security number, telephone number, place of birth, country of origin, place of employment, school or educational institution attended, source of income, status as a recipient of public benefits, the customer identification number associated with a public utilities account, medical information or disability information" of a license applicant must be kept confidential,

---

[1] A copy of the Act can be found as Exhibit 1 to Plaintiff's complaint.  *See* ECF No. 1-1.

except that such information may be disclosed:  (1) to the subject of the information, (2) where disclosure is "expressly required" by the Federal REAL ID Act, or (3) as mandated by a court order, judicial warrant signed by an Article III judge, or a state criminal or civil subpoena.  Act § 2 at 1.

*Additional restrictions on disclosure to immigration authorities*:  As to immigration, the Act prohibits DMV from disclosing or making accessible "in any manner records or information" it "maintains" for standard license applicants and holders specifically to federal immigration authorities (including the U.S. Immigration and Customs Enforcement (ICE) and Customs and Border Protection (CBP), which the Act specifies by name), absent "a lawful court order or judicial warrant signed by a judge appointed pursuant to article III of the United States constitution." *Id.* at 2.  Moreover, the Act requires DMV to "require any person or entity that receives or has access to records or information from [DMV]" to certify that the information recipient will not, among other things, use the information "for civil immigration purposes" or disclose such records or information to any agency that primarily enforces immigration law, except pursuant to certain cooperative arrangements that do not involve enforcement of immigration law.  *Id.*

*Notification to subject of disclosure to immigration authorities*:  "Upon receiving a request for such records or information from an agency that primarily enforces immigration law, the commissioner" must inform the individual who is the subject of the request (and the identity of the requesting agency) within three days.  *Id.*

*Prohibition on information revealing type of driver's license or learner's permit held by an individual*:  The Act also prohibits DMV from disclosing or making accessible any record identifying whether the type of driver's license or learner's permit that a person holds either does or does not meet federal standards for identification.  Act § 2, p.2.

4

### III.   Procedural Background

On July 24, 2019, Frank Merola commenced this action in his official capacity as Rensselaer County Clerk against New York Governor Andrew Cuomo, Attorney General Letitia James, and DMV Commissioner Mark Schroeder, seeking to enjoin implementation of the Act. *See* ECF No. 1.  The Complaint specifically alleges that the Act conflicts with Sections 1373 and 1644.  ECF No. 1 ¶ 44–46.  Plaintiff later moved for a preliminary injunction, *see* ECF No. 27, which Defendants opposed while simultaneously moving to dismiss, *see* ECF No. 30.  In their response, Defendants raised several non-constitutional arguments (discussed further below) but, in the alternative, have asserted that Sections 1373 and 1644 cannot preempt state law because they are unconstitutional.  Pursuant to Fed. R. Civ. P. 5.1, Defendants filed a notice of the constitutional question.  *See* ECF No. 31.  And on December 2, Merola filed a combined reply brief in support of his motion for a preliminary injunction and in opposition to the Defendants' motion to dismiss.  *See* ECF No. 32.

### ARGUMENT

As set forth above, Defendants move to dismiss Plaintiff's lawsuit on several grounds not directly related to Sections 1373 and 1644.  The United States respectfully submits that the Court should address New York's threshold arguments first, which do not require the Court to pass on the constitutionality of Sections 1373 and 1644, or on the statutes' possible application to the Act.  The United States takes no position on those threshold issues.

If, however, the Court reaches the constitutional question, it should uphold Sections 1373 and 1644.  These statutes do not commandeer states and localities to regulate or administer a federal regulatory scheme.  Rather, they are modest information-sharing provisions that expressly *preempt* state and local regulations that obstruct federal enforcement of the immigration laws

against individual aliens.   The Supreme Court in *Murphy v. National Collegiate Athletic Association*, 138 S. Ct. 1461 (2018), confirmed that express preemption provisions such as this are permissible under the Tenth Amendment; the *Printz* Court suggested that statutes requiring "only the provision of information to the Federal Government" do not violate the Tenth Amendment, 521 U.S. at 918; and the Second Circuit rejected a Tenth Amendment challenge to these same statutes in *City of New York*, 179 F.3d at 33–37.   Therefore, should this Court reach the constitutional issues, it should likewise reject Defendants' constitutional challenge here.

I.      **The Court Should Resolve Defendants' Threshold Arguments First to Avoid Passing on the Constitutionality of Sections 1373 and 1644 or the Statutes' Application to the Act.**

In moving to dismiss, Defendants raise three non-merits arguments:  Merola lacks capacity to bring his claims as a matter of state law, ECF No. 30-1 at 19–21; Merola lacks standing, *id.* at 21–30; and Merola does not have a cause of action under the Supremacy Clause, *id.* at 30–31.  If any of these arguments is correct—a matter on which the United States takes no position—the Court does not need to reach Defendants' constitutional claims or to address the possible conflict between New York and federal law.

Accordingly, the Court should resolve these questions before addressing the merits. Because standing is a jurisdictional requirement, it must be addressed before non-jurisdictional issues.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94 (1998).  Whether Plaintiff has capacity to sue or an enforceable cause of action are also threshold questions that logically precede any consideration of the merits.

The Supreme Court, moreover, has long and consistently counseled that, wherever possible, courts should avoid resolving cases on constitutional grounds.  "If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought

not to pass on questions of constitutionality . . . unless such adjudication is unavoidable." *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944); s*ee also Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 204–06 (2009).  For this reason, too, the Court should determine whether Plaintiff has standing, capacity to sue, and an enforceable cause of action before addressing the constitutionality of Sections 1373 and 1644.

Finally, the United States notes that there is a significant question whether the Act conflicts with federal law.  As the summary above makes clear, the Act's disclosure restrictions are wide-reaching and appear aimed at frustrating the federal government's enforcement of the immigration laws.  The Act specifically prohibits disclosing records or information to federal immigration authorities—singling out ICE and CBP by name—absent a court order or warrant signed by an Article III judge.  Act § 2 at 2.  The Act further mandates that when an agency that primarily enforces immigration law requests records or information, DMV must provide notice to the individual who is the subject of the request (along with the identity of the requesting agency) within three days.  *Id.*  This notification requirement is extraordinarily broad.  By its terms, it appears to apply even to requests from federal immigration authorities that are accompanied by a lawful court order signed by an Article III judge.  It also lacks any written exceptions.  The Act thus seems to require New York officials to provide notification to the subjects of requests from federal immigration authorities even when, for example, providing such notification would endanger the lives of law enforcement personnel or the public.  This notification requirement also applies only to requests from an agency—like ICE and CBP—that primarily enforces immigration law.

These aspects of the Act are legally suspect.  As the Second Circuit observed in rejecting a Tenth Amendment challenge to Sections 1373 and 1644, "the Supremacy Clause . . . bars states

from taking actions that frustrate federal laws and regulatory schemes." *City of New York*, 179 F.3d at 35. Indeed, even if Congress had not enacted Sections 1373 and 1644, that conclusion would follow from basic principles of obstacle preemption. *See Arizona*, 567 U.S. at 399.[2] Furthermore, under the Supremacy Clause, state laws are invalid if they "regulate[] the United States directly *or discriminate [] against the Federal Government or those with whom it deals*." *North Dakota v. United States*, 495 U.S. 423, 435 (1990) (emphasis added). As noted above, the Act singles out federal immigration enforcement for adverse treatment; the Act's prohibition on information-sharing and requirement to notify the subject of an information request apply to no entity other than an "agency that primarily enforces immigration law or to any employee or agent of such agency." Act § 2 at 2.

Notwithstanding these points, the United States takes no position at this time on whether the Act is consistent with Sections 1373 and 1644 and with other principles of preemption. But particularly given the weighty issues discussed above, the United States respectfully urges the Court to address Defendants' threshold arguments first, and to address these federal-law issues only if necessary.

## II.   Sections 1373 and 1644 Are Constitutional.

If the Court nonetheless determines it must reach the constitutional issue, the Court should

---

[2] As to Sections 1373 and 1644 in particular, Defendants also insist that the Act cannot conflict with these statutes because "the Act . . . does not require applicants for standard licenses to submit information about immigration classification." ECF No. 30-1 at 32. But it would reward willful blindness to allow New York to avoid Sections 1373 and 1644 merely by structuring the Act so that employees are not required to learn about immigration status (particularly where, as here, the express purpose of the new form of identification created by the Act is to provide identification for unlawfully present aliens, *see, e.g.*, Press Release, New York State Senate, Senate Passes Driver's License Access and Privacy Act (Green Light NY) (June 17, 2019), https://www.nysenate.gov/newsroom/press-releases/senate-passes-drivers-license-access-and-privacy-act-green-light-ny).

uphold the challenged statutes' constitutionality.[3]  As the Second Circuit held in *City of New York*, Sections 1373 and 1644 are entirely consistent with the Tenth Amendment.  179 F.3d at 33–37.  Those laws do "not compel[] state and local governments to enact or administer any federal regulatory program" and do not "affirmatively conscript[] states, localities, or their employees into the federal government's service."  *Id.* at 35.  "Rather, they prohibit state and local governmental entities or officials only from directly restricting the voluntary exchange of immigration information with the INS," *id.*, thus falling within the information-sharing exception to the anti-commandeering principle suggested by *Printz*, *see* 521 U.S. at 918.

The Second Circuit's conclusion was, and remains, correct.  First, "[t]he Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens."  *Arizona*, 567 U.S. at 394.  "As long as it is acting within the powers granted it under the Constitution, Congress may impose its will on the States" and "may legislate in areas traditionally regulated by the States."  *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991).  Additionally, courts "begin with the time-honored presumption that [a statute] is a 'constitutional exercise of legislative power.'"  *Reno v. Condon*, 528 U.S. 141, 148 (2000) (quoting *Close v. Glenwood Cemetery*, 107 U.S. 466, 475 (1883)).

More specifically, Sections 1373 and 1644 do not contain any of the features that have led the Supreme Court to find that other statutes violate the Tenth Amendment.  The statutes do not require jurisdictions to regulate in a particular area, as in *New York v. United States*, 505 U.S. 144 (1992), and *Murphy*, 138 S. Ct. 1461.  Nor do they require jurisdictions to enforce or "actual[ly]

---

[3] As a threshold matter, Defendants' challenge to Section 1644 lacks specificity or citation to legal authority.  *See* ECF No. 30-1 at 31–32 (merely asserting Section 1644 is unconstitutional).  That omission likely forfeits their constitutional challenge to that statute.  *See In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132–33 (2d Cir.2008) (arguments raised only in passing are forfeited).

administ[er]" a federal regulatory scheme, as in *Printz*.  521 U.S. at 918.

Instead, Section 1373 states that "State" and "local government entit[ies] or official[s] may not prohibit, or in any way restrict," any government entity or official from sharing with federal immigration authorities "information regarding the citizenship or immigration status" of any individual.  8 U.S.C. § 1373(a); *see also id.* § 1373(b) (similar).  Section 1644 similarly provides that "no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from the Immigration and Naturalization Service information regarding the immigration status, lawful or unlawful, of an alien in the United States."  *Id.* § 1644.  As the statutory text makes clear, these provisions are nothing more than information-sharing provisions that preempt state and local governments from hindering the federal government's enforcement of the immigration laws against individual aliens.

Indeed, in *Printz*, although the Supreme Court held that local law enforcement officers could not be required to perform background checks to validate the legality of gun sales under federal law, it expressly distinguished statutes that "require only the provision of information to the Federal Government," as such laws "do not involve . . . the forced participation of the States' executive in the actual administration of a federal program."  521 U.S. at 918.  Thus, the Supreme Court's Tenth Amendment cases are not properly read to invalidate reporting requirements, such as the requirement for "state and local law enforcement agencies to report cases of missing children to the Department of Justice."  *Id.* at 936 (O'Connor, J., concurring) (citing 42 U.S.C. § 5779(a)).  The Supreme Court has also explained that its precedents on "commandeering" do not apply in the same way when the issue is mere information-sharing.  Simply put, the Constitution does not prohibit federal enactments that "do[] not require the States in their sovereign capacity to regulate their own citizens," but instead "regulate[] the States as the owners of data bases."  *Reno*, 528 U.S.

at 151; *see also*, *e.g.*, *Freilich v. Bd. of Dirs. of Upper Chesapeake Health, Inc.*, 142 F. Supp. 2d 679, 697 (D. Md. 2001) (stating that "[t]his Court has found no case" holding that a statutory command to report information for a federal data bank "commandeers the state"), *aff'd sub nom. Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205 (4th Cir. 2002).

      *Murphy* did not supplant this line of cases; in fact, the *Murphy* Court distinguished *Reno* on the ground that it did *not* involve statutes that "regulate the States' sovereign authority to 'regulate their own citizens.'" 138 S. Ct. at 1478–79 (quoting *Reno*, 528 U.S. at 151). Sections 1373 and 1644, likewise, do not regulate that authority to regulate. Furthermore, *Murphy* concerned a subject (gambling regulation) that falls within the traditional police powers of a state, which is a far cry from immigration regulation, a plenary power of Congress. *See Arizona*, 567 U.S. at 394. The statute in *Murphy*, moreover, was highly unusual and bears no structural similarity to Sections 1373 and 1644. That statute made "it 'unlawful' for a State or any of its subdivisions 'to sponsor, operate, advertise, promote, license, or authorize by law or compact . . . a lottery, sweepstakes, or other betting, gambling, or wagering scheme based . . . on' competitive sporting events." 138 S. Ct. at 1470 (alteration in original) (quoting 28 U.S.C. § 3702(1)). The Supreme Court explained that this provision—which purported to prohibit state and local entities from "authoriz[ing] by law" certain gambling schemes—"unequivocally dictate[d] what a state legislature may and may not do." *Id.* at 1474, 1478. Under the statute, it was therefore "as if federal officers were installed in state legislative chambers and were armed with the authority to stop legislators from voting on any offending proposals." *Id.* at 1478.

      Attempting to analogize *Murphy* to this case, Defendants contend that Section 1373 "violates the Tenth Amendment's anti-commandeering principle by impermissibly telling state and local legislatures that they may not enact laws or rules governing how state and local

government employees handle immigration status information acquired in the course of official duties." ECF No. 30-1 at 33. But quite unlike the statute in *Murphy*, Sections 1373 and 1644 do not directly regulate state legislatures and certainly do not "stop legislators from voting on any offending proposals." 138 S. Ct. at 1478. Indeed, Sections 1373 and 1644 both apply "[n]otwithstanding any other provision of Federal, State, or local law," which presupposes that state (and local) legislatures might enact inconsistent laws. Although Sections 1373 and 1644 *preempt* any such laws, that is true of any preemption provision. "The basic principle" explained in *Murphy*—"that Congress cannot issue direct orders to state legislatures," 138 S. Ct. at 1478— is inapplicable here.[4]

The district court decisions on which Defendants rely likewise misunderstand *Murphy*. *See* ECF No. 30-1 at 33 n.12 (citing *City and Cty. of San Francisco v. Sessions*, 349 F. Supp. 3d 924, 949–53 (N.D. Cal. 2018); *New York v. Dep't of Justice*, 343 F. Supp. 3d 213, 235 (S.D.N.Y. 2018), *appeal filed* No. 19-cv-267 (2d Cir. 2019); *City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 869 (N.D. Ill. 2018)). Those decisions mistakenly perceive a public-private distinction at work in

---

[4] Relatedly, the Second Circuit's decision upholding Sections 1373 and 1644 recognized a distinction "between invalid federal measures that seek to impress state and local governments into the administration of federal programs and valid federal measures that prohibit states from compelling passive resistance to particular federal programs." *City of New York*, 179 F.3d at 35. *Murphy*, for its part, rejected a different argument: that the federal government cannot "compel a State to enact legislation, but . . . that prohibiting a State from enacting new laws is another matter." *Murphy*, 138 S. Ct. at 1478; *see also id.* ("Suppose Congress ordered States with legalized sports betting to take the affirmative step of criminalizing that activity and ordered the remaining States to retain their laws prohibiting sports betting. There is no good reason why the former would intrude more deeply on state sovereignty than the latter."). The Supreme Court's point was simply—formalistically, perhaps—that Congress cannot issue direct orders to state legislatures. *See id.* ("In none of [the prior cases relied upon by respondents and the United States] did we uphold the constitutionality of a federal statute that commanded state legislatures to enact or refrain from enacting state law."). As noted above, Sections 1373 and 1644 do not issue commands to state legislatures. They simply preempt inconsistent state laws, so *Murphy* does not undercut *City of New York* on the constitutional question presented here.

*Murphy*'s statement that preemption must be understood to "regulate[] the conduct of private actors, not the States."  138 S. Ct. at 1481.  Express preemption provisions are *always* directed at governmental entities rather than private persons.  Preemption provisions override contrary state and local law, and laws are passed by governmental entities.  But as the Supreme Court admonished in *Murphy*, "it is a mistake to be confused by the way in which a preemption provision is *phrased*," because "language might appear to operate directly on the States"—even in a targeted way—but in substance merely prevent the States from "impos[ing] a duty that [is] inconsistent— *i.e.*, in conflict—with federal law" or "confer[] on private entities . . . a federal right to engage in certain conduct subject only to certain (federal) constraints."  *Id.* at 1480 (emphasis added); *see id.* (discussing 49 U.S.C. app. § 1305(a)(1) (1988)).

That is exactly what Sections 1373 and 1644 do:  they preempt state and local entities from hindering the INA's regulation of aliens.  And the distinction drawn by the *Reno* line of cases discussed above reflects the sound principle that information-access provisions like Sections 1373 and 1644 do not "regulate the States' sovereign authority to 'regulate their own citizens,'" *Murphy*, 138 S. Ct. at 1479 (quoting *Reno*, 528 U.S. at 151), but rather ensure federal access to information regarding federally-regulated individuals that the federal government needs to regulate those individuals.  Indeed, the legislative history of Section 1373 indicates the statute was intended to counteract passive resistance to sharing information.[5]  As relevant here, the INA provides that a federal immigration officer "shall have power without warrant . . . to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States."  8 U.S.C. § 1357(a)(1).

---

[5] *See, e.g.*, S. Rep. No. 104-249, at 19–20 (1996) (noting that "[t]he acquisition, maintenance, and exchange of immigration-related information by State and local agencies is consistent with, and potentially of considerable assistance to, *the Federal regulation of* immigration and the achieving of the purposes and objectives of the [INA]" (emphasis added)).

The INA also provides that certain classes of aliens, including certain criminal aliens, shall be removed from the United States upon the order of the Attorney General or the Secretary of Homeland Security.  *E.g.*, *id.* §§ 1227(a), 1228.  Simply put, federal officials cannot carry out these statutory duties without access to necessary information.

Because Sections 1373 and 1644 merely ensure that the federal government has the information it needs to carry out the federal immigration scheme—in which the federal government takes full responsibility for the regulation and enforcement of immigration laws against individuals—they do not present any risk of deflecting political responsibility.  Instead, the statutes ensure that the federal government can carry out its responsibilities to "interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States" and to remove the alien "upon the order of the Attorney General" after completion of criminal sentences.  8 U.S.C. § 1357(a)(1); *id.* §§ 1227(a), 1228.  Thus, fully consistent with *Murphy*, the purpose and effect of Sections 1373 and 1644 are to ensure that the federal government has the information it needs to "regulate individuals, not States."  *Murphy*, 138 S. Ct. at 1476 (quoting *New York*, 505 U.S. at 166).  *Murphy* did not create a novel limitation that bars preemption of direct state interference with federal law.  Rather, as the Supreme Court has long recognized, the "controlling principle" of preemption jurisprudence—a principle fundamental to our Nation's constitutional order—remains that "any state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause."  *Perez v. Campbell*, 402 U.S. 637, 652 (1971); *see also McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 322 (1819); *City of New York*, 179 F.3d at 35 (observing that "the Supremacy Clause . . . bars states from taking actions that frustrate federal laws and regulatory schemes").

## **CONCLUSION**

For the foregoing reasons, if the Court reaches the issue, it should uphold Sections 1373

and 1644's constitutionality.

Dated:  December 5, 2019                              Respectfully submitted,


                                                     JOSEPH H. HUNT
                                                     Assistant Attorney General

                                                     BRIGHAM J. BOWEN
                                                     Assistant Branch Director

                                                     /s/ *Charles E.T. Roberts*
                                                     CHARLES E.T. ROBERTS
                                                     (PA Bar No. 326539)
                                                     Trial Attorney
                                                     United States Department of Justice
                                                     Civil Division, Federal Programs Branch
                                                     1100 L Street, NW
                                                     Washington, DC 20005
                                                     Tel: (202) 305-8628
                                                     Fax: (202) 616-8570
                                                     Email: charles.e.roberts@usdoj.gov

                                                     *Counsel for the United States of America*