**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**FRANK J. MEROLA,**

**1:19-cv-899**
                                    **Plaintiff,**            **(GLS/TWD)**

                 **v.**

**ANDREW M. CUOMO et al.,**

                         **Defendants.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Harris, Beach Law Firm                     ELLIOT A. HALLAK, ESQ.
677 Broadway                               KARL J. SLEIGHT, ESQ.
Suite 1101
Albany, NY 12207

99 Garnsey Road                            KELLY S. FOSS, ESQ.
Pittsford, NY 14534

**FOR THE DEFENDANTS:**
HON. LETITIA JAMES                         KEITH J. STARLIN
New York State Attorney General            Assistant Attorney General
The Capitol
Albany, NY 12224

28 Liberty Street                          LINDA FANG
New York, NY 10005                         Assistant Solicitor General

**FOR THE UNITED STATES:**
Department of Justice                      CHARLES E.T. ROBERTS, ESQ.
Civil Division, Federal Programs
  Branch
1100 L Street, NW

Washington, DC 20005
**FOR AMICUS CURIAE:**
HON. WILLIAM TONG                    JOSHUA PERRY, ESQ.
Attorney General of Connecticut
P.O. Box 120
55 Elm Street
Hartford, CT 06106

**Gary L. Sharpe**
**Senior District Judge**

<h1 align="center"><u>MEMORANDUM-DECISION AND ORDER</u></h1>

<h2 align="center">I. <u>Introduction</u></h2>

To the dissatisfaction of the parties and public-at-large, courts are at times unable to pass upon the merits of a case for one reason or another. There are various reasons why the ultimate question for which parties seek judicial review cannot be broached.  This is such a case.  It should be noted that cases like this one, where the court is constrained to dismiss without deciding the legal issues at play — here, a challenge to New York's Driver's License Access and Privacy Act (DLAPA),[1] more commonly referred to as the "Green Light Law" — does not mean in the vernacular that the "law is legal," despite what any politician may claim, (Dkt. No. 27, Attach. 7 at 2).  Indeed the court has not and cannot pass upon that

---

[1] *See* L. 2019, ch 37.

2

question no matter how compelling the arguments are on one side or the other.  With that caveat in mind, the court turns to the issues now before it.

Pending are a motion for a preliminary injunction filed by plaintiff Frank J. Merola, Clerk of the County of Rennselaer, New York, and a cross motion to dismiss pursuant to Rule 12(c) of the Federal Rules of Civil Procedure[2] filed by defendants Andrew M. Cuomo, Governor of the State of New York, Letitia A. James, Attorney General of the State of New York, and Mark J.F. Schroeder, Commissioner of the New York State Department of Motor Vehicles (DMV) (hereinafter collectively referred to as

---

[2] Without any explanation why they may be properly considered on a Rule 12(c) motion, the State submitted affidavits and attached exhibits from two Department of Motor Vehicle employees for the purpose of providing background information.  (Dkt. No. 30, Attachs. 2-6.)  The matters presented outside of the pleadings must be excluded from consideration absent any argument why they may be properly considered without conversion to summary judgment.  *See* Fed. R. Civ. P. 12(d); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (explaining that the complaint includes any attached written instrument, materials incorporated by reference, and documents integral to the complaint).  It is unclear why the State moved for dismissal pursuant to Rule 12(c) only.  (Dkt. No. 30, Attach. 1 at 1.)  When standing is lacking, the court's subject matter jurisdiction is implicated and the proper method for seeking dismissal on that basis is Rule 12(b)(1), which would allow for the submission and consideration by the court of matters outside the pleadings.  In any case, where standing is questioned, even under a rule that would ordinarily require the court to exclude matters presented outside of the pleadings, like Rule 12(b)(6) or (c), "the district court is authorized to consider matters outside the pleadings and make findings of fact when necessary."  *First Capital Asset Mgmt. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 378 (S.D.N.Y. 2002) (citations omitted), *on reconsideration*, 219 F. Supp. 2d 576 (S.D.N.Y. 2002), *aff'd sub nom. First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004).  For this reason, the court has considered Merola's declaration, which was submitted in conjunction with his preliminary injunction motion, (Dkt. No. 27, Attach. 2), to the extent that it bears on the standing question.

"the State").  (Dkt. Nos. 27, 30.)[3]  For the reasons that follow, the State's cross motion to dismiss is granted, and Merola's motion for a preliminary injunction is denied as moot.

## II.  **Background**[4]

The DLAPA, which goes into effect on December 14, 2019, modifies sections 201, 502, and 508 of the New York Vehicle and Traffic Law.  *See* L. 2019, ch 37.  The amendments alter the New York State driver's licensing scheme in three material ways that are at issue here by: (1) forbidding disclosure or sharing of applicant information except under limited circumstances; (2) expanding the approved forms of identification accepted for obtaining a driver's license; and (3) requiring prompt notice to an individual about whom a request for information was made by "any agency that primarily enforces immigration law."  *Id.* §§ 2-6.  Some county

---

[3]  The court has also considered an amicus curiae brief filed by the Attorney General of Connecticut on behalf of the State of Connecticut and joined by California, the District of Columbia, Delaware, Hawaii, Illinois, Maryland, Nevada, Oregon, Vermont, and Washington, (Dkt. No. 33, Attach. 1), and a memorandum of law filed by the United States as intervenor pursuant to Rule 5.1(c) of the Federal Rules of Civil Procedure and 28 U.S.C. § 2403(a) to defend the constitutionality of 8 U.S.C. §§ 1373 and 1644, (Dkt. No. 34).  The amicus curiae brief and United States' memorandum of law present arguments that are ultimately not germane to the disposition of the case.

[4]  In addition to the court's prior Summary Order, (Dkt. No. 22 at 1-2), the Decision and Order in *Kearns v. Cuomo*, No. 1:19-CV-00902, 2019 WL 5849513, at *2-3 (W.D.N.Y. Nov. 8, 2019), *appeal docketed*, No. 19-3769 (2d Cir. Nov. 13, 2019), includes relevant background information.

clerks throughout the State of New York, like Merola, are required to perform DMV functions, such as the issuance of driver's licenses.  *See* N.Y. Veh. & Traf. Law § 205(1).

Broadly speaking, Merola challenges the DLAPA as prempted by federal law.  (Compl. ¶¶ 40, 78, Dkt. No. 1.)  He contends that he confronts a dilemma: comply with the DLAPA and violate the United States Constitution and expose himself to federal criminal liability, or refuse to comply with the DLAPA and be subject to removal from office and a loss of funding.  (Compl. ¶ 77; Dkt. No. 32 at 5-6.)  The State promotes this legislation as advancing "public safety and economic growth."  (Dkt. No. 30, Attach. 1 at 1.)

Some sixteen days before this action was commenced, a near-identical case was commenced in the United States District Court for the Western District of New York, involving a similar challenge to the DLAPA.  (*Kearns v. Cuomo*, Dkt. No. 1, 1:19-cv-902.)  The plaintiff there, Michael Kearns, is the Clerk of Erie County, and he brought his action against the same defendants named in this matter.  (*See generally id.*)  That action has since been dismissed for lack of standing and an appeal is pending with the Second Circuit.  *See Kearns v. Cuomo*, No. 1:19-CV-00902, 2019

WL 5849513 (W.D.N.Y. Nov. 8, 2019), *appeal docketed*, No. 19-3769 (2d Cir. Nov. 13, 2019).

### III.  Standards of Review

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim."  *Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233, 234 (2d Cir. 2012) (internal quotation marks and citation omitted).  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), *abrogated on other grounds by J.C. Christensen & Assocs., Inc.*, 786 F.3d 191 (2d Cir. 2015).

As mentioned above, *see supra* note 2, to the extent that standing is challenged, the State's motion is properly considered under Rule 12(b)(1).  Under Rule 12(b)(1), the standard of review is similar to that of Rule 12(b)(6), except that the court "may refer to evidence outside the pleadings . . . [and a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citations omitted).

### IV.  Discussion

6

**A.**     **Cross Motion to Dismiss**

The State makes a handful of arguments in support of its cross motion to dismiss.  (Dkt. No. 30, Attach. 1.)  Two of them urge dismissal for the threshold issues of lack of standing and capacity, while the others go to the merits of Merola's claims.  (*Id.* at 9-35.)

       *i.*     *Standing*

Standing is a "threshold question," which should be addressed at the outset of the litigation.  *See Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994).  The broad contours of standing — an injury-in-fact, causation, and redressability, *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) — and the finer points were discussed at length in *Kearns v. Cuomo*, 2019 WL 5849513, but Merola's sole theory of standing here is different from that proffered in *Kearns*.  (Dkt. No. 32 at 3-9.)

Relying on *Board of Education of Central School District No. 1 v. Allen*, 392 U.S. 236 (1968), and *Aguayo v. Richardson*, 473 F.2d 1090 (2d Cir. 1973), Merola contends that he "unquestionably [has] established oath-of-office standing to pursue his claims in his official capacity as

County Clerk." (Dkt. No. 32 at 3.)[5]  While the State attempted to get out in

front of this theory in its memorandum of law filed in support of its cross

motion, it primarily focused on other bases of standing, or the lack thereof.

(Dkt. No. 30, Attach. 1 at 11-20.)  That is, in part, the fault of the briefing

schedule, which was set to accommodate the sensitive timing issues in this

case, and the State has not had the opportunity[6] to address Merola's

specific contentions about oath-of-office standing raised in his response.

In any case, the State argues that compliance with the DLAPA is not at

odds with either the Federal or State Constitutions.  (*Id.* at 19.)  It claims

further that Merola's subjective belief that his compliance would violate the

Federal Constitution is insufficient, and his argument about the adverse

consequences that would befall him (removal from office and loss of

---

[5] Merola makes no effort to oppose the several other arguments, largely overlapping with those that formed the basis of the dismissal for lack of standing in *Kearns*, which have also been advanced by the State here.  (*Compare* Dkt. No. 30, Attach. 1 at 11-20, *with* Dkt. No. 32 at 3-9.)  In addition, Merola, who brings this action only in his official capacity, has requested leave to amend to add individual capacity claims in the event the court "deems it necessary and appropriate."  (Dkt. No. 32 at 8 n.5.)  The court does not engage in such hand-holding.  If Merola was inclined to seek leave to amend, he should have done so consistent with the Local Rules of Practice.  *See* N.D.N.Y. L.R. 7.1(a)(4).  Additionally, it is not clear how Merola would establish standing by bringing his causes of action in his individual capacity.  Indeed, *Kearns* soundly rejected individual standing under nearly identical circumstances.  *See* 2019 WL 5849513, at *6-12.

[6] Despite the limitations of the briefing schedule, the State did not request permission to file an otherwise unpermitted reply in further support of its cross motion, which is contemplated by the Local Rules of Practice.  *See* N.D.N.Y. L.R. 7.1(c).

licensing revenue) are "highly speculative and premature." (*Id.* at 19-20.)

In *Allen*, the Supreme Court indicated, in dicta, the existence of standing where a plaintiff who"ha[s] taken an oath to support the United States Constitution" is "in the position of having to choose between violating [his] oath and taking a step—refusal to comply with [a challenged state statute]—that would be likely to bring [his] expulsion from office and also" a loss of funding. 392 U.S. at 241 n.5. This doctrine, sometimes called the "'dilemma' theory of standing," has been recognized by the Supreme Court, Second Circuit, and other Circuits in subsequent cases, although it is infrequently invoked. *Bd. of Educ. of Mt. Sinai Union Free Sch. Dist. v. N.Y. State Teachers Ret. Sys.*, 60 F.3d 106, 112 (2d Cir. 1995); *see Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 544 n.7 (1986)*; Aguayo*, 473 F.2d at 1100.

Here, Merola took an oath of office in which he "solemnly sw[ore] that [he] w[ould] support the constitution of the United States, and the constitution of the State of New York, and that [he] w[ould] faithfully discharge the duties of the office . . . , according to the best of [his] ability." (Dkt. No. 27, Attach. 2 ¶ 8.) He argues that the only requirement he need meet in order to establish oath-of-office standing is his good faith belief

9

that compliance with the DLAPA would require him to violate the Federal

Constitution.  (Dkt. No. 32 at 5.)  Merola disputes the applicability of *Finch*

*v. Mississippi State Med. Association, Inc.*, 585 F.2d 765, 774 (5th Cir.

1978), *modified*, 594 F.2d 163 (5th Cir. 1979), relied upon by the State,

(Dkt. No. 30, Attach. 1 at 19-20), which held that a mere belief that a

statute violates the constitution is insufficient to establish standing, *see*

*Finch*, 585 F.2d at 774, as at odds with *Allen* and *Aguayo*, and not binding

on this court in any event, (Dkt. No. 32 at 6.)  Alternatively, Merola argues

that he has adequately demonstrated a realistic threat of removal from

office or the loss of funding should those requirements be deemed a part of

the test for oath-of-office standing by this court.  (*Id.* at 6-7.)  Because the

briefing is lacking on the finer points, and Merola has made a colorable

argument for standing based on his oath of office, (*id.* at 5-6), dismissal on

this ground would be inappropriate at this juncture.

       ii.    *Capacity*

     The State contends that Merola lacks capacity to sue under New

York law and that he cannot demonstrate that he should benefit from an

exception to the general bar preventing municipalities and their officers

from challenging state legislation.  (Dkt. No. 30, Attach. 1 at 9-11.)  In

opposition, Merola argues that the DLAPA would require him to violate a federal constitutional proscription, namely the Supremacy Clause, as well as a state constitutional proscription "on voting by non-citizens," and that he, therefore, has capacity to sue despite the general bar against suits by municipal officers.  (Dkt. No. 32 at 9.)  Because Merola lacks capacity as discussed below, dismissal is required.

Capacity, juxaposed with standing, "is conceived to be a party's personal right to litigate in a federal court."  6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1542 (3d ed. Supp. 2019).  The "[c]apacity to sue or be sued is determined," as relevant here, "by the law of the state where the court is located."  Fed. R. Civ. P. 17(b)(3).  In New York, municipalities, and, by extension, their officers, lack capacity to sue because they "are merely subdivisions of the State, created by the State for the convenient carrying out of the State's governmental powers and responsibilities as its agents."  *City of New York v. New York*, 86 N.Y.2d 286, 290 (1995).  There are limited "exceptions to the general rule barring local governmental challenges to State legislation," only one of which is at issue here: "where 'the municipal challengers assert that if they are obliged to comply with the State statute they will by that very

compliance be forced to violate a constitutional proscription.'"  *Id.* at 291-92 (quoting *In re Jeter v. Ellenville Cent. Sch. Dist.*, 41 N.Y.2d 283, 287 (1977) (citing *Allen*, 20 N.Y.2d 109, *aff'd*, 392 U.S. 236)); *see Bd. of Educ. of Roosevelt Union Free Sch. Dist. v. Bd. of Trustees of State Univ. of New York*, 185 Misc. 2d 704, 708 (Sup. Ct. 2000), *aff'd as modified*, 282 A.D.2d 166 (3d Dep't 2001).

Merola contends that his compliance with the DLAPA will force him to violate proscriptions in both the Federal and State Constitutions.  (Dkt. No. 32 at 9.)  He snarkily points the finger at the State for "not surprisingly, fail[ing] to provide a single citation for the unsupportable argument that the Supremacy Clause is not a 'constitutional proscription.'"  (*Id.*)  While his observation is true, it is similarly true that he failed to cite contrary authority.  Insofar as his one-sentence State Constitution argument is concerned, which is best described as half-hearted, Merola provides no citation to where in the State Constitution the "proscription on voting by non-citizens," (*id.*), exists, leaving the court to guess.

While the court is loathe to engage in semantics, it is necessary here.  A "proscription" is a prohibition or "an imposed restraint or restriction."  Merriam Webster's Collegiate Dictionary (10th ed. 1997).

12

Anecdotally, New York courts have interpreted constitutional or statutory proscriptions to be something expressly forbidden and along the lines of "no (blank) shall (blank)." *See, e.g., Bellanca v. N.Y. State Liquor Auth.*, 54 N.Y.2d 228, 230-31 (1981) (referring to an older version of N.Y. Alco. Bev. Cont. Law § 106(6-a)'s prohibition against topless dancing as a "blanket *proscription* against all topless dancing" as well as New York State Constitution Art. 1, § 8's prohibition against any law abridging speech as a proscription (emphasis added)); *accord Weiner v. McCord*, 264 A.D.2d 864, 866 (3d Dep't 1999) (considering the following language: "No member of this state shall be disfranchised" as an express constitutional proscription).

With this interpretation in mind, Merola's first argument carries no weight.  Indeed, the Supremacy Clause contains no proscription whatsoever.  The Clause in its entirety provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2.  No proscription is evident, unlike, for example,

13

the First Amendment's "Congress shall make no law . . .," *id.* amend. I, or

the Fourth Amendment's proclamation that the right against unreasonable

searches "shall not be violated," *id.* amend. IV.  The list of federal

constitutional proscriptions is long, but it does not include the Supremacy

Clause and, therefore, cannot support Merola's assertion.

Merola's argument about the State Constitution fares no better.  As

mentioned above, no citation is provided to the supposed "proscription on

voting by non-citizens."  (Dkt. No. 32 at 9.)  However, Article I, § 1 of the

New York State Constitution provides:

> No member of this state shall be disfranchised, or
> deprived of any of the rights or privileges secured to
> any citizen thereof, unless by the law of the land, or
> the judgment of his or her peers, except that the
> legislature may provide that there shall be no primary
> election held to nominate candidates for public office
> or to elect persons to party positions for any political
> party or parties in any unit of representation of the
> state from which such candidates or persons are
> nominated or elected whenever there is no contest or
> contests for such nominations or election as may be
> prescribed by general law.

*If* this is the wellspring of the proscription referenced by Merola, it does not

help his cause.  The language contains a proscription, *see Weiner*, 264

A.D.2d at 866 — a prohibition against disenfranchisement — but it is not

14

what Merola claims it to be: *a proscription on voting by non-citizens*.[7]  The

court by no means intends to intimate that the DLAPA results in

disenfranchisement, but, even if it did along the lines of Merola's argument,

his claim that "as the State agent offering voter registration" he would be

required "to violate the State Constitution proscription on voting by non-

citizens," (Dkt. No. 32 at 9), is steps removed and wholly speculative.  The

DLAPA requires no such conduct by Merola.  This is chiefly so because

any prospective non-citizen voter licensed to drive under the DLAPA would

have to affirmatively lie about his or her eligibility to vote.  (Dkt. No. 30,

Attach. 1 at 4-5.)  Ultimately, the county board of elections is tasked with

review and examination of voting applications and verification of the

applicant's identity.  *See* N.Y. Elec. Law § 5-210(8)-(9).  For obvious

reasons, it cannot be said that Merola would be forced to violate the State

Constitution's proscription against disenfranchisement in the event that

such a person engages in criminal conduct.  For all of these reasons,

Merola cannot demonstrate that he has capacity to sue under the

---

[7] The court is left to guess at whether Merola intends to suggest that watering down the vote with ineligible voters who fraudulently register disenfranchises lawful voters.  Just like his failure to elaborate upon his argument about where in the State Constitution the proscription exists, he has not adequately explained his argument in this regard, which is a basis to reject it.

constitutional proscription exception, and dismissal is required.

**B.    Preliminary Inunction**

Because dismissal is required given Merola's lack of capacity to bring suit, his motion for a preliminary injunction, (Dkt; No. 27), is denied as moot.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the State of Connecticut's letter motion seeking permission to file an amicus curiae brief (Dkt. No. 33) is **GRANTED**; and it is further

**ORDERED** that the State's letter motion seeking permission to respond to the United States' memorandum of law (Dkt. No. 35) is **DENIED**; and it is further

**ORDERED** that the State's cross motion to dismiss (Dkt. No. 30) is **GRANTED**, and the complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that Merola's motion for a preliminary injunction (Dkt. No. 27) is **DENIED** as moot; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

December 13, 2019
Albany, New York

Gary L. Sharpe
U.S. District Judge